UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL HERLING,

                              **Plaintiff,**

        – against –

NEW YORK CITY DEPARTMENT OF EDUCATION
and CARLSTON GRAY, as aider and abettor,

                              **Defendants.**

**Case No.: 13-CV-05287 (JG) (VVP)**

# MEMORDANUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
szabell@laborlawsny.com

**TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................................ iii

I.   Preliminary Statement ................................................................................................. 1

II.  Statement of Facts ...................................................................................................... 1

    a.   Factual Background.................................................................................................. 1

    b.   Procedural History.................................................................................................. 6

III. Argument .................................................................................................................... 7

Point I

Plaintiff has Plead Plausible Claims for Discrimination and Retaliation under Title VII............................ 7

    a.   Applicable Pleading Standard .................................................................................... 7

    b.   Plaintiff Demonstrates a Facially Plausible Claim of Disparate Treatment ................................... 9

        1.   Plaintiff Demonstrates that he Suffered Adverse Employment Actions ................... 10

        2.   Plaintiff establishes he suffered Adverse Employment Actions under Circumstances Giving Rise to an Inference of Discrimination ......................... 11

    c.   Plaintiff Demonstrates a Facially Plausible Claim of Retaliation......................................... 14

Point II

Plaintiff Exhausted his Administrative Remedies for his Title VII Claims of Discrimination......17

Point III

Plaintiff Maintains Viable Causes of Action Arising under the NYSHRL Against Individual Defendant Gray.................................................................................................................19

Point IV

Plaintiff's Claims are Timely.................................................................................................. 20

a.   Plaintiff's Title VII Claims...........................................................................................20

b.   Plaintiff's NYSHRL and NYCHRL Claims ...............................................................22

Point V

Plaintiff Maintains Viable NYSHRL and NYCHRL Claims Against Individual Defendant
Gray...........................................................................................................................................23

Conclusion..................................................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL COURT CASES

### United States Supreme Court

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...............................7, 8

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .........................................................7

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...............................................9

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)......................................20

Northern and Santa Fe Railway Co. v. White,
548 U.S. 53, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006) ...............................................15

Scheuer v. Rhodes, 416 U.S. 232 (1974).................................................................8

United Air Lines v. Evans, 431 U.S. 553 (1977).......................................................20

Univ. of Tex. Sw. Med. v. Nassar, 133 S. Ct. 2517 (2013) ...........................................16

Zinermon v. Burch, 494 U.S. 113 (1990) ..................................................................7

### United States Court of Appeals

Brown v. Coach Stores, Inc., 163 F.3d 706 (2d Cir. 1998) ..............................................8

Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397 (2d Cir. 1993)..............18

Deravin v. Kerik, 335 F.3d 195 (2d Cir. 2003)......................................................8, 18

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
553 F.3d 187 (2d Cir. 2009).................................................................................7

Feingold v. New York, 366 F.3d 138 (2d Cir. 2004)....................................................9

Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir. 2001) ...............................................18

Francis v. City of New York, 235 F.3d 763 (2d Cir. 2000)..............................................16

Galabya v. N.Y.C. Bd. Of Educ., 202 F.3d 636 (2d Cir. 2000)......................................17

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) ..........................................................7, 8

Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998) ..............................................18

Hertz Corp. v. City of New York, 1 F.3d 121 (2d Cir. 1993).........................................................8

In re NYSE Specialists Secs. Litig., 503 F.3d 89 (2d Cir. 2007) ................................................7

Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.,
716 F.3d 10 (2d Cir. 2013)...........................................................................................................14

La Grande v. DeCrescente Distrib. Co., Inc., 370 Fed. App'x 206 (2d Cir. 2010) .......................10

Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012) ...............................................................14

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007).............................................................................14

Rose v. N.Y. City Bd. of Educ., 257 F.3d 156 (2d Cir. 2001).......................................................12

Ruotolo v. City of N.Y., 514 F.3d 184 (2d Cir. 2008).....................................................................7

Stewart v. United States Immigration & Naturalization Serv.,
762 F.2d 193 (2d Cir. 1985) ........................................................................................................18

Todd v. Exxon Corp., 275 F.3d 191 (2d Cir. 2001).......................................................................8

Williams v. R.H. Donnelley, Corp., 368 F.3d 123 (2d Cir. 2004).................................................10

Zelnik v. Fashion Institute of Technology, 464 F.3d 217 (2d Cir. 2006).....................................15

Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376 (2d Cir. 2001)....................................8

**Federal District Court**

Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ......................12

Baird v. Kingsboro Psychiatric Ctr.,
11-CV-159 (NGG) (LB), 2013 WL 5774288 (E.D.N.Y. Oct. 24, 2013) ......................................16

Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210 (S.D.N.Y. 2010) ....................9

Edwards v. Jericho Union Free School Dist., 904 F. Supp. 2d 294 (E.D.N.Y. 2012) .................23

Fagan v. U.S. Carpet Installation. Inc., 770 F. Supp. 2d 490 (E.D.N.Y. 2011)............................16

Fowler v. Scores Holding Co., 677 F. Supp. 2d 673 (S.D.N.Y. 2009) ..........................................9

Grant v. New York State Off. for People with Dev. Disabilities,
12-CV-4729, 2013 WL 3973168 (E.D.N.Y. July 30, 2013)..........................................14

Grenion v. Farmers Ins. Exch.,
12-CV-3219 (JS) (GRB), 2013 WL 3551708 (E.D.N.Y. July 11, 2013) ........................9

Harris v. NYU Langone Med. Ctr., 12 Civ. 0454 (RA) (JLC), 2013 U.S. Dist. LEXIS 99328
2013 WL 3487032 (S.D.N.Y. July 9, 2013) ..................................................................16

Ige v. Command Sec. Corp., No. 99-CV-6916, 2002 WL 720944
(E.D.N.Y. Mar.12, 2002) ..............................................................................................19

Fowler v. Scores Holding Co., 677 F. Supp. 2d 673 (S.D.N.Y. 2009)..............................9

Lewinter v. N.Y. City Dep't of Educ., 2010 WL 2746334 (S.D.N.Y. July 9, 2010) ...................23

Perry v. State of N.Y. Dep't of Labor, No. 08 Civ. 4610 (PKC), 2009 WL 2575713
(S.D.N.Y. Aug. 20, 2009)..............................................................................................12

Reynoso v. All Foods, Inc., 908 F. Supp. 2d 330 (E.D.N.Y. 2012) .............................7, 8

Robinson v. Gucci Am., 11-CV-3742 (JPO), 2012 WL 259409 (S.D.N.Y. Jan. 27, 2012) ..............
...................................................................................................................................9, 10

Rosenberg v. City of New York, 2011 WL 4592803 (E.D.N.Y. Sept. 30, 2011) ........................23

Sank v. City University of New York, No. 10 Civ. 4975 (RWS), 2011 WL 5120668
(S.D.N.Y. Oct. 28, 2011) ..............................................................................................12

Spencer v. City of New York, 2007 WL 1573871 (S.D.N.Y. May 30, 2007) .............................23

Taylor v. N.Y.C. Dept. of Educ., 11-CV-3582 (JG), 2012 WL 5989874
(E.D.N.Y. Nov. 30, 2012).............................................................. 1, 10, 15-17, 20, 22

Vaughn v. City of New York, No. 06–CV–6547, 2010 WL 2076926
(E.D.N.Y. May 24, 2010)... .........................................................................................15

White v. New York City Dept. of Educ., 05-CV-2064 (RRM) (LB), 2008 WL 4507614
(E.D.N.Y. Sept. 30, 2008) ............................................................................................18

Willman v. Zelman & Assocs., LLC, 11 Civ. 1216 (KBF), 2012 U.S. Dist. LEXIS 35246,
2012 WL 811512 (S.D.N.Y. Mar. 15, 2012) ................................................................16

**STATUTES & REGULATIONS**

42 U.S.C. § 2000-(e), et seq.................................................................................1

42 U.S.C. § 2000e–5(e)(1) ................................................................................17

N.Y. Educ. Law § 3813(1), (2–b) .....................................................................22

NYC Administrative Code § 8-107, et seq. ........................................................2

New York Human Rights Law, Executive Law § 290, et seq. .............................1

New York City Human Rights Law, NYC Administrative Code § 8-107, et seq. ..........................1

Fed. R. Civ. P 12(b)(6) ......................................................................................8

## PRELIMINARY STATEMENT

Plaintiff, Russell Herling, (hereinafter "Plaintiff") respectfully submits this Memorandum of Law in opposition to Defendants' pending motion to dismiss the Amended Complaint. [ECF Docs. 12-14] For all of the reasons set forth below, Defendants' motion must be denied with prejudice and the matter should be referred to Magistrate Judge Pohorelsky for discovery.

Plaintiff acknowledges Your Honor's decision in Taylor v. N.Y.C. Dept. of Educ., 11-CV-3582 (JG), 2012 WL 5989874, *7 (E.D.N.Y. Nov. 30, 2012) and is cognizant of the holding set forth therein. However, as detailed in this memorandum, the facts in this case are sufficiently distinguishable from those in Taylor. Specifically, unlike in Taylor, Plaintiff was subject to numerous adverse employment actions, including, but not limited to his receipt of "Unsatisfactory" ratings, which materially altered the terms and conditions of his employment. Additionally, each of Plaintiff's claims are either timely, asserted as background evidence, or reasonably related to Plaintiff's claims.

Therefore, Your Honor's decision in Taylor, while providing sound guidance for the parties in this dispute, is factually inapposite.

## STATEMENT OF FACTS

### A. Factual Background

Plaintiff, a Caucasian, Jewish male, commenced this action against his employer the New York City Department of Education (hereinafter "DOE") and immediate supervisor Carlston Gray (hereinafter "Gray") (collectively "Defendants") based upon Defendant DOE's violations of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000-(e), et seq. (hereinafter "Title VII"), and Defendants' violations of the New York Human Rights Law, Executive Law § 290, et seq. (hereinafter "NYSHLR"), the New York City Human Rights Law,

1

NYC Administrative Code § 8-107, et seq. (hereinafter "NYCHLR"), and other appropriate rules, regulations, statutes and ordinances. (Am. Compl. ¶ ¶ 1, 13)

In September 2001, Plaintiff began his employment with the DOE as a physical education teacher. (Id. at ¶ 14)  Plaintiff was assigned to the William E. Grady Career/Technical High School where Defendant Gray was the Principal and Plaintiff's supervisor. (Id. at ¶ ¶ 15-16) Defendant Gray is an African-American male with a documented history of inappropriate conduct based upon race and/or color. (Id. at ¶ ¶ 17-18)   In addition, throughout Plaintiff's tenure under Defendant Gray, Defendant Gray subjected Plaintiff to a hostile work environment, numerous adverse employment actions, and discrimination predicated upon Plaintiff's race and/or color and religion. (Id. at ¶ 19)

For example, Defendant Gray regularly discriminated against Plaintiff and subjected him to adverse employment actions because of his Jewish faith. (Id. at ¶ 41)  For example, on January 23, 2007, Plaintiff's grandmother passed away and thereafter Plaintiff provided Defendant Gray with a note from the funeral director in support of his request to be excused from work. (Id. at ¶ ¶ 42-43)  Defendant Gray rejected this note and demanded a "Mass card" from Plaintiff. (Id. at ¶ 44) (hereinafter "the mass card incident")  Defendant Gray knew this demand was unreasonable considering his prior knowledge of Plaintiff's religion. (Id. at ¶ ¶ 45-46) Defendant Gray then demanded a copy of Plaintiff's mother's driver's license and birth certificate in order to approve Plaintiff's time off, documentation which Plaintiff was also unable to provide. (Id. at ¶ 46)  Upon information and belief, such documentation was not required from similarly situated non-Jewish co-workers in such situations. (Id. at ¶ 48)  Plaintiff was unable to meet Defendant Gray's unreasonable and discriminatory demands and, in response, Defendant Gray issued Plaintiff an

"Unsatisfactory" rating (hereinafter "'U' rating") for taking time off to attend his grandmother's funeral. (Id. at ¶ 47)

Moreover, on February 4, 2008, Defendant Gray ordered Plaintiff to remove his yarmulke even after Plaintiff explained that it was a religious article of clothing, required in his faith. (Id. at ¶ 49) (See Ex. 3 of Clark Decl. Ex. A) (hereinafter "the yarmulke incident") Defendant Gray disciplined Plaintiff for wearing this religious article of clothing and then demanded Plaintiff wear a "kuffi," a hat which is traditionally worn within African cultures, indicating Plaintiff would not be disciplined for wearing this head covering in lieu of his yarmulke. (Id. at ¶ ¶ 50-51)

In April 2008, Plaintiff contacted the Superintendent, Linda Waite, to complain about Defendant Gray's discriminatory conduct. (Id. at ¶ 53)  This complaint was forwarded to Defendant Gray, who contacted Plaintiff directly and threatened Plaintiff, stating he better not contact the Superintendent again "or else." (Id. at ¶ 54)  In or around April 2008 Plaintiff also complained to his Union representative, Chris Manos.  At that time, Mr. Manos, along with the Union delegate, Martin Rosenthal, brought these complaints to the DOE but to no avail. (Id. at ¶ 55)

Despite Plaintiff's complaints, the conduct continued and Defendant Gray retaliated against Plaintiff for making such complaints. (Id. at ¶ 56) For instance, in March 2009, while Plaintiff was at the kosher food table, Defendant Gray yelled to Plaintiff in front of co-workers, in a sarcastic manner, "if you don't eat the kosher food, you will go to Hell." (Id. at ¶ 57)

Defendant Gray also subjected Plaintiff to a series of materially adverse employment actions. On January 21, 2010, Plaintiff was required to attend a disciplinary meeting with Defendant Gray because, according to Defendant Gray, Plaintiff left school grounds without

3

signing out. (Id. at ¶ 20) (See Ex. 2 of Clark Decl. Ex. A) However, Plaintiff had in fact signed out. (Id. at ¶ 20)  Similarly, Defendant Gray, motivated by Plaintiff's race and/or color and religion, subjected Plaintiff to false and pretextual discipline for alleged lateness, which did not occur. (Id. at ¶¶ 22-23)

On February 25, 2010, Defendant Gray intentionally and fraudulently altered Plaintiff's time and attendance records in order to justify the imposition of employee discipline for "alleged lateness." (Id. at ¶ 24) Consequently, Plaintiff was referred to the Department of Education Office of Labor for further discipline. (Id. at ¶ 25)  As a result, on two separate occasions (March 23, 2010 and April 21, 2010) Plaintiff was issued disciplinary memoranda regarding alleged lateness and absenteeism based upon Defendant Gray's false accusations. (Id. at ¶¶ 27-28, 30) However, similarly situated African American co-workers who were late more frequently than Plaintiff were not subjected to similar discipline. (Id. at ¶ 29)

In or around the 2007-2008 school year, Defendant Gray also issued Plaintiff a "U" rating after rejecting a doctor's note for not containing Plaintiff's medical identification number, information normally not required by Defendant DOE. (Id. at ¶¶ 33-34)

Defendant Gray did not treat Plaintiff's African-American comparators in the same manner.  For example, Dawn Watson[1], an African American woman, received a "Satisfactory" rating (hereinafter "S" rating) from Defendant Gray despite being absent for six (6) weeks. (Id. at ¶ 36) Additionally, in September 2009 Plaintiff received a reprimand and write-up from Defendant Gray for passing a student who was allegedly absent thirty-seven (37) times. (Id. at ¶ 36)  This student was only absent seven (7) times and, upon information and belief, Plaintiff's

---

[1] The Amended Complaint incorrectly states this co-worker's name is "Heather Watson" rather than "Dawn Watson".  This was an inadvertent error.

4

African-American comparators who also issued this student a passing grade were not disciplined. (Id. at ¶ 37-38)

Further, in March 2009, Plaintiff received a reprimand and corresponding write-up from Defendant Gray for his alleged failure to hold tutoring sessions. (Id. at ¶ 39) (hereinafter "the tutoring incident") Plaintiff was available for the tutoring session in question; however, the students chose not to avail themselves of the tutoring opportunity. (Id. at ¶ 39)  Tellingly, Helema Pierce, an African-American woman also did not have students present in her tutoring session on the same day and at the same time; however, she did not receive a reprimand and/or a write-up from Defendant Gray. (Id. at ¶ 40)

Despite Plaintiff's exceptional performance for the 2009-2010 school year, on June 18, 2010, Defendant Gray issued Plaintiff an "Unsatisfactory" Annual Professional Performance Review. (Id. at ¶ 59)  Thereafter, the DOE ordered Plaintiff's pay frozen from July 2010 through June 2011 and barred Plaintiff from all coaching positions and earning any per session employment. (Id. at ¶ 61)  Upon information and belief, Plaintiff's African American comparators with poor employment records did not receive "U" ratings or such discipline. (Id. at ¶¶ 60, 62)

The "U" rating placed Plaintiff in jeopardy of losing his teaching license and, by extension, his career. (Id. at ¶ 65)  Plaintiff's complaints of discrimination and retaliation led to the scheduling of a conference before the DOE to be held on October 13, 2010. (Id. at ¶ 66)  Defendant Gray failed to appear at this mandatory conference despite being present at work and being issued reminders. (Id. at ¶ 67)

After failing to appear, Defendant Gray's discrimination of Plaintiff continued, causing Plaintiff to file a Charge of Discrimination with the Equal Employment Opportunity Commission

on January 13, 2011. (Id. at ¶ 68)   The conference before the DOE was rescheduled and ultimately held on January 11, 2011. (Id. at ¶ 69)  Defendant Gray appeared *via* telephone some four (4) hours after the scheduled start time and rendered his final decision to issue a "U" rating for the school year. (Id. at ¶ 69-70) This "U" rating, which was memorialized in a letter from the DOE to Plaintiff dated February 23, 2011, ruined Plaintiff's perfect scholastic ten (10) year "Satisfactory" rating record. (Id. at ¶ 70-71)  (See Exhibit A)  Further, the "U" rating impedes Plaintiff's ability to find alternative employment in other school districts. (Id. at ¶ 72)

In September 2011, as a result of the "U" rating, Plaintiff's teaching assignment was changed and he was scheduled to lose his former position during the DOE school "transformation." (Id. at ¶ 73) During the "transformation," teachers with "U" ratings lost their positions and teachers with a "U" rating during the last five (5) years were relegated to "substitute teacher" positions. (Id. at ¶ 73)

### B. Procedural History

On January 13, 2011, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. (See Clark Decl. Ex. A).  Thereafter, on July 9, 2011 Plaintiff received his "Notice of Right to Sue" letter from the U.S. Department of Justice. (Am. Compl. Ex. A)

Plaintiff originally commenced this action in the Supreme Court of the State of New York, County of Nassau on August 12, 2013. [ECF Doc. 1]  On September 23, 2013, the DOE removed this action to this Court. [ECF Doc. 1]  The DOE then moved to designate this matter as a "Brooklyn action" and the Honorable Judge Leonard D. Wexler granted the DOE's motion by Order dated November 22, 2013. (See ECF Order on Motion to Reassign Case dated November 22, 2013)

6

Plaintiff filed his Amended Complaint on December 23, 2013 [ECF Doc. 11] Thereafter, on January 17, 2014, Defendants moved to dismissed Plaintiff's Amended Complaint. [ECF Doc. 12-14]

## ARGUMENT

### POINT I

### PLAINTIFF PLEAD PLAUSIBLE CLAIMS FOR DISCRIMINATION AND RETALIATION UNDER TITLE VII

#### A. Applicable Pleading Standard

"Under the now well-established *Twombly* standard, to survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." Reynoso v. All Foods, Inc., 908 F. Supp. 2d 330, 336-37 (E.D.N.Y. 2012) (citing Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009)) (internal quotation marks omitted).  "In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor." Reynoso, 908 F. Supp. 2d at 336-37 (citing Zinermon v. Burch, 494 U.S. 113, 118 (1990); *In re* NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007)).

In the Second Circuit, the Courts are guided by two principles in deciding a motion to dismiss. Reynoso, 908 F. Supp. 2d at 336 (citing Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009))).  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by a mere conclusory statement, do not suffice.'" Reynoso, 908 F. Supp. 2d at 337

(citing Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, 129 S. Ct. 1937) (internal quotation marks omitted). "Second, only a complaint that states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Reynoso, 908 F. Supp. 2d at 337 (citing Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950, 129 S.Ct. 1937) (internal quotation marks omitted). "Thus, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determinate whether they plausibly give rise to an entitlement of relief.'" Reynoso, 908 F. Supp. 2d at 337 (citing Iqbal, 129 S. Ct. at 1950, 129 S. Ct. 1937).

Dismissal pursuant to Fed. R. Civ. P 12(b)(6) is only proper if the Court finds that the complaint cannot state *any* set of facts that would entitle Plaintiff to relief. Reynoso, 908 F. Supp. 2d at 336-37 (citing Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)) (emphasis added). In deciding a motion to dismiss, the Court considers whether the Plaintiff is entitled to offer evidence to support the claims, not whether the Plaintiff will ultimately prevail. Reynoso, 908 F. Supp. 2d at 336-37 (citing Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Moreover, "[t]he Second Circuit has held that 'the pleading requirements in discrimination cases are very lenient, even *de minimis*.'" Reynoso, 908 F. Supp. 2d at 336-37 (citing Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)); see also Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 380 (2d Cir. 2001) ("evidence necessary to satisfy th[e] initial burden [is] 'minimal' and '*de minimis*.'")). Therefore, in an employment discrimination case, "a complaint need not establish a *prima facie* case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the

8

basis for the claim." Robinson v. Gucci Am., 11-CV-3742 (JPO), 2012 WL 259409, *3
(S.D.N.Y. Jan. 27, 2012) (citing Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d
210, 215 (S.D.N.Y. 2010) (quoting Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 679
(S.D.N.Y. 2009))) (internal quotation marks omitted).

    Here, Plaintiff sets forth a *prima facie* case of employment discrimination. However,
even if the Court finds Plaintiff has not established a *prima facie* case, Plaintiff satisfies his
required burden setting by forth a facially plausible claim and giving Defendants fair notice of
his claim.

### B. Plaintiff Demonstrates a Facially Plausible Claim of Disparate Treatment

    "To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he is a
member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse
employment action; and (4) the adverse employment action occurred under circumstances giving
rise to an inference of discrimination." Grenion v. Farmers Ins. Exch., 12-CV-3219 (JS) (GRB),
2013 WL 3551708, *2 (E.D.N.Y. July 11, 2013) (citing Feingold v. New York, 366 F.3d 138,
152 (2d Cir. 2004); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, (1973)).

    Here, Plaintiff meets the *de minimis* pleading requirements needed to establish a claim of
employment discrimination. Defendants concede that Plaintiff establishes the first two (2)
elements. Through his Amended Complaint, Plaintiff establishes he is a member of a protected
class as a Caucasian, Jewish male. He also set forth facts demonstrating he was qualified for his
position, in that, he has held his position since September 2001 and prior to the acts of
discrimination and retaliation, Plaintiff maintained a perfect scholastic ten (10) year
"Satisfactory" rating record. Additionally, as discussed below, Plaintiff has plead facts which
establishes he suffered materially adverse employment actions that occurred under circumstances

giving rise to an inference of impermissible discrimination. Although not required to survive a motion to dismiss, Plaintiff has established a *prima facie* case of employment discrimination. Robinson, 11-CV-3742 (JPO), 2012 WL 259409 at *3.

### 1. Plaintiff Demonstrates that he Suffered Adverse Employment Actions.

At the pleading stage, in an employment discrimination case, a plaintiff's claim need only be facially plausible and give defendants fair notice of the basis for the claim. Robinson, 2012 WL 259409 at *3. Here, Plaintiff's Amended Complaint contains facts sufficient to place Defendants on fair notice of the numerous adverse employment actions he suffered.

> An actionable adverse employment action is "a materially significant disadvantage with respect to the terms of [plaintiff's] employment[,]" Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted), such as "termination of employment, a demotion . . ., a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation," Galabya v. N.Y.C. Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citations omitted).

La Grande v. DeCrescente Distrib. Co., Inc., 370 Fed. App'x 206, 211 (2d Cir. 2010).

Moreover, as Your Honor held in Taylor v. N.Y.C. Dept. of Educ., 11-CV-3582 (JG), 2012 WL 5989874, *7 (E.D.N.Y. Nov. 30, 2012), "[n]egative performance evaluations or ratings may, in some circumstances, constitute adverse employment action, but they must trigger negative consequences to the conditions of employment to qualify as such." Taylor, 11-CV-3582 (JG), 2012 WL 5989874, *7 (E.D.N.Y. Nov. 30, 2012) (citations and internal quotation marks omitted) (emphasis added).

Here, the false and discriminatory disciplinary write-ups and corresponding "U" ratings Plaintiff received culminated in his June 18, 2010 "Unsatisfactory" Annual Performance Review. As such, Plaintiff submits each write-up and "U" rating, when viewed in the aggregate, is part and parcel of a larger discriminatory agenda. Therefore, each separate disciplinary reprimand

10

and "U" rating, to the extent it is based upon false and pretextual information, constitutes an adverse employment action.

Plaintiff experienced direct negative consequences triggered by these adverse employment actions. Specifically, the DOE ordered Plaintiff's pay frozen from July 1, 2010 through June 2011. Plaintiff was also barred from all coaching positions and from earning any "per-session" employment.

Additionally, aside from the loss of compensation, in September 2011, as a result of his "U" rating, Plaintiff's teaching assignment was changed and he was scheduled to lose his position during the DOE school "transformation." As a result of the "transformation" teachers with "U" ratings lost their positions and teachers with a "U" rating during the last five (5) years were relegated to a "substitute teacher" positions. Moreover, these adverse employment actions have impeded Plaintiff's ability to seek alternate find employment in other school districts because most applications require disclosure of such reprimands and ratings.

In light of the foregoing, Plaintiff sets forth facts sufficient to place Defendants on fair notice of his claim and that he suffered adverse employment actions. The disciplinary write-ups and "U" ratings issued by Defendant Gray constitute adverse employment actions because Plaintiff's employment was harmed by these actions when, in addition to other negative effects, his pay was frozen and he was barred from coaching and per-session employment.

### 2. Plaintiff establishes he Suffered Adverse Employment Actions under Circumstances Giving Rise to an Inference of Discrimination.

Plaintiff plead facts establishing that the adverse employment actions to which he was subjected give rise to an inference of impermissible discrimination. Plaintiff advances both direct and circumstantial evidence of discrimination in the form of verbal comments and discriminatory treatment he received in comparison to his similarly situation co-workers.

Importantly, verbal comments may constitute direct evidence of discrimination when, like here, they are made by a decision-maker in the adverse employment action, and where there is a close nexus between the comments and the action. See Rose v. N.Y. City Bd. of Educ., 257 F.3d 156, 162 (2d Cir. 2001). Here, Defendant Gray issued several discriminatory comments to Plaintiff regarding his Jewish faith all of which bear a close nexus to several adverse employment actions. As set forth on page 2 above, on January 23, 2007, as a result of "the Mass card incident," Defendant Gray disciplined Plaintiff by issuing him a "U" rating for taking time off to attend his grandmother's funeral.

In another instance, "the yarmulke incident," discussed on page 3 above, Defendant Gray disciplined Plaintiff for wearing a yarmulke. Defendant Gray demanded Plaintiff instead wear a kuffi, a hat which is traditionally worn within the African culture. In doing so, Defendant Gray indicated Plaintiff would not be disciplined for wearing a kuffi.

Defendant Gray further subjected Plaintiff to discriminatory comments when, in March 2009, while Plaintiff was at the kosher food table, Defendant Gray yelled to Plaintiff in front of co-workers, in a sarcastic manner, "if you don't eat the kosher food, you will go to Hell." (See page 3 above)

Plaintiff also alleges facts of indirect discrimination through the treatment he experienced as compared to his similarly situated co-workers. "The law permits a plaintiff to raise a plausible inference of discrimination by alleging preferential treatment given to similarly situated individuals." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) (citing Sank v. City University of New York, No. 10 Civ. 4975 (RWS), 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011) (quoting Perry v. State of N.Y. Dep't of Labor, No. 08

Civ. 4610 (PKC), 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009), aff'd, 398 Fed. App'x 628 (2d Cir.2010)) (internal quotation marks omitted).

Here, Plaintiff's allegations address the treatment he experienced as compared to his similarly-situated African American co-workers. Specifically, similarly situated African-American co-workers were not disciplined when they failed to sign out or when they were frequently late. Defendant Gray did not alter the time and attendance records of Plaintiff's similarly situated African-American co-workers.

As previously explained on page 4, Defendant Gray also issued Plaintiff a "U" rating for failing to provide a doctor's note containing specific information which is not normally required for a doctor's note. Defendant Gray did not require the same of Plaintiff's similarly situated African-American co-workers.

Moreover, during the 2009-2010 school year, Plaintiff's similarly situated African American co-worker, Dawn Watson, was issued a satisfactory ("S") rating by Defendant Gray, despite being absent from work for six (6) weeks during the school year. Plaintiff was absent far less than Ms. Watson and was issued a "U" rating.

Plaintiff also received a reprimand and was issued a write-up for giving a passing grade to a student who was allegedly absent thirty-seven (37) times. In addition to the fact that the student was only absent seven (7) times, none of Plaintiff's similarly situated African American co-workers were disciplined for passing this student.

Additionally, Plaintiff received a reprimand and a write-up from Defendant Gray for "the tutoring incident" discussed on page 5 above. Plaintiff was available but students chose not to avail themselves of the tutoring. Further, a similarly situated African-American teacher, Helema

Pierce, had no students present in her scheduled tutoring session on the same day and at the same time; however, she did not receive a reprimand and/or a write-up from Defendant Gray.

Defendant Gray ultimately issued Plaintiff a "U" rating for the 2009-2010 school year. However, Plaintiff's similarly situated African American and non-Jewish co-workers, as well as those who had not complained of discrimination, who's employment records were worse than Plaintiff for the 2009-2010 school year were not issued "U" ratings.

Therefore, Plaintiff sets forth facts sufficient to establish that the adverse employment actions to which he was subjected occurred under circumstances giving rise to an inference of impermissible discrimination. Through these claims, Plaintiff meets his burden of providing facially plausible claims and giving Defendants fair notice of the basis for the claims.

## C. Plaintiff Demonstrates a Facially Plausible Claim of Retaliation

"To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that '(1) []he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" Grant v. New York State Off. for People with Dev. Disabilities, 12-CV-4729, 2013 WL 3973168 (E.D.N.Y. July 30, 2013) (citing Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012); see also Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007)).

Here, Plaintiff lodged several complaints based upon Defendant Gray's conduct all of which known by the DOE and Defendant Gray.  Defendant Gray discriminated against Plaintiff because of his race and religion by making discriminatory comments to Plaintiff and by subjecting Plaintiff to discriminatory requests not made to his African-American co-workers.

14

For instance, Defendant Gray told Plaintiff he was prohibited from wearing his yarmulke and demanded that Plaintiff to bring in a "Mass" card from his grandmother's funeral to excuse his absence even though there is no such card in the Jewish religion.

In April 2008, Plaintiff contacted the Superintendent, Linda Waite, to complain about Defendant Gray's discriminatory conduct. Plaintiff also complained to his Union representative, Chris Manos, who, along with the Union delegate, Martin Rosenthal, complained on numerous occasions to Defendant Gray regarding his discrimination of Plaintiff.

Plaintiff's complaints led to the scheduling of a conference on October 13, 2010 before the DOE, which, as explained above, was rescheduled to January 11, 2011 due to Defendant Gray's failure to attend.

Plaintiff suffered a series of adverse employment actions as a result of his protected activity. As Your Honor has recognized, "[t]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." Taylor, 11-CV-3582 (JG), 2012 WL 5989874, at *9 (citing Vaughn v. City of New York, No. 06–CV–6547, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010) (citing Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006))).

"The Second Circuit has found that 'negative evaluation letters, [and] express accusations of lying . . . may qualify as adverse employment actions for purposes of a retaliation claim." Taylor, 11-CV-3582 (JG), 2012 WL 5989874, at *9 (citing Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 226 (2d Cir. 2006)).

In Taylor, Your Honor found the Plaintiff's receipt of "U" evaluations for science lessons and a "U" rating at the end of the school year constituted adverse employment actions for

purposes of a retaliation claim. Taylor, 11-CV-3582 (JG), 2012 WL 5989874, at *10.  In this case, Defendant Gray issued Plaintiff a series of "U" ratings after Plaintiff complained about the discriminatory treatment he received from Defendant Gray beginning in or around April 2008.

Further, Plaintiff establishes a causal connection between his protected activity and the adverse actions imposed by Defendant Gray.  Defendants incorrectly rely on the Supreme Court's decision in Univ. of Tex. Sw. Med. v. Nassar, 133 S. Ct. 2517, 2534 (2013) in applying the "but-for" standard to the causation element of retaliation. This Court has found that "while Nassar would affect plaintiff's burden on a motion for summary judgment, it does not change the outcome here as Nassar 'does not appear to alter the pleading requirements' of a Title VII retaliation claim." Baird v. Kingsboro Psychiatric Ctr., 11-CV-159 (NGG) (LB), 2013 WL 5774288, *10 n.7 (E.D.N.Y. Oct. 24, 2013) (citing Harris v. NYU Langone Med. Ctr., 12 Civ. 0454 (RA) (JLC), 2013 U.S. Dist. LEXIS 99328, at *70 n. 27, 2013 WL 3487032 (S.D.N.Y. July 9, 2013); cf. Willman v. Zelman & Assocs., LLC, 11 Civ. 1216 (KBF), 2012 U.S. Dist. LEXIS 35246, at *9, 2012 WL 811512 (S.D.N.Y. Mar. 15, 2012) ("[F]or the purposes of this motion [to dismiss] plaintiffs are not required to plead that age discrimination was the 'but-for' cause of his termination...."); Fagan v. U.S. Carpet Installation. Inc., 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011) ("Plaintiff's [are] not required to plead that age discrimination was the 'but for' cause of their termination.")).

Here, Plaintiff satisfies the *de minimis* burden required at the pleading stage to establish a *prima facie* case of retaliation.  After Plaintiff made complaints to the Superintendent and his Union about Defendant Gray's discriminatory conduct, Defendant Gray retaliated against Plaintiff.  Particularly during the 2009-2010 school year, Defendant Gray subjected Plaintiff to

false and pretextual discipline by issuing several "U" ratings and write-ups. These adverse actions included:

- On September 30, 2009, Defendant Gray falsely accused Plaintiff of inappropriate grading practices which consisted of giving a passing grade to a student who was allegedly absent thirty-seven (37) times. Plaintiff received a reprimand and a write-up;
- On January 21, 2010, Plaintiff was required to attend a disciplinary meeting with Defendant Gray because he allegedly left school grounds without signing out;
- On February 25, 2010, Defendant Gray intentionally and fraudulently altered Plaintiff's time and attendance records to reflect more frequent instances of lateness by Plaintiff in order to justify the imposition of employee discipline;
-On March 23, 2010, as a result of the pretextual discipline, Plaintiff was issued a disciplinary memorandum, which was placed in his personnel file falsely stating he was late seventeen (17) times over the course of the 2009/2010 school year;
- On April 21, 2010, Plaintiff was again issued a disciplinary memorandum regarding alleged lateness and absenteeism due to Defendant Gray's false accusations; and
- Plaintiff was issued a "U" rating when Defendant Gray rejected a doctor's note provided by Plaintiff requiring that Plaintiff instead provide a new doctor's note signed by his doctor and listing his medical identification number - information which is not normally required for a doctor's note.

Through his pleadings, Plaintiff sets forth facts sufficient to state a facially plausible claim of retaliation and has placed Defendants on fair notice of his claim.

## POINT II

## PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR HIS TITLE VII CLAIMS OF DISCRIMINATION

It is undisputed that "[b]efore filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by filing a change with the EEOC or an equivalent state or city agency." Taylor, 11-CV-3582 (JG), 2012 WL 5989874, *4 (citing 42 U.S.C. § 2000e-5(e); see also Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (holding that exhaustion is not a jurisdictional prerequisite but an "essential" precondition to bringing a Title VII claim in federal court). The statute provides a plaintiff three hundred (300) days "after the alleged unlawful employment practice occurred" to file an administrative complaint. See 42 U.S.C. § 2000e-5(e)(1).

17

"The requirement that administrative remedies be exhausted is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" White v. New York City Dept. of Educ., 05-CV-2064 (RRM) (LB), 2008 WL 4507614, *2 (E.D.N.Y. Sept. 30, 2008) (citing Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded on other grounds by Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998)). "As such, a district court only has jurisdiction over Title VII claims that are either included in an EEOC charge or are "reasonably related" to the discrimination alleged in the EEOC charge." White, 05-CV-2064 (RRM) (LB), 2008 WL 4507614, *2 (citing Butts, 990 F.2d at 1401) (emphasis added).

Here, Defendants' argument that several allegations contained in the Amended Complaint may not be pursued because they were not set forth in his Charge of Discrimination and occurred under different circumstances is without merit. Plaintiff avers that any additional claims in the Amended Complaint are "reasonably related" to Plaintiff's Charge of Discrimination and thus permissible or relevant to this analysis.

"A claim is considered 'reasonably related' if 'the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" White v. New York City Dep't of Educ., 05-CV-2064 (RRM) (LB), 2008 WL 4507614, *3 (E.D.N.Y. Sept. 30, 2008) (citing Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)). "This determination focuses 'on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" White, 2008 WL 4507614, at *3 (citing Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)). Further, "the 'reasonably-related' exception allows for 'loose pleading.'" White, 2008 WL

18

4507614, at *3 (citing Ige v. Command Sec. Corp., No. 99-CV-6916, 2002 WL 720944, *6 (E.D.N.Y. Mar.12, 2002)).

Here, the additional claims at issue are "reasonably related." Specifically, Defendants take issue with Plaintiff's claims that his pay was frozen from July 1, 2010 through June 2011, he was barred from all coaching positions and earning any per session employment, and that he was scheduled to lose his former position during the DOE school "transformation." These claims are "reasonably related" to Plaintiff's underlying claims of discrimination and retaliation set forth in his Charge of Discrimination in that these actions logically occurred as a result of Plaintiff's June 18, 2010 Annual Performance Review "U" rating issued by Defendant Gray.

Plaintiff's Annual Performance Review "U" rating negatively impacted Plaintiff's record and these acts were the consequences of Plaintiff's now tarnished teaching record. These events certainly fall within the scope of the EEOC investigation and can reasonably be expected to grow out of the Charge of Discrimination made by Plaintiff. Therefore, Plaintiff has not failed to exhaust his administrative remedies with respect to these charges because they are "reasonably related," if not directly related, to his Charge of Discrimination.

### POINT III

### PLAINTIFF MAINTAINS VIABLE CAUSES OF ACTION ARISING UNDER THE NYSHRL AGAINST INDIVIDUAL DEFENDANT GRAY

Defendants improperly assert that all Title VII claims against Defendant Gray must be dismissed because an individual may not be held liable under Title VII. However, Defendant Gray is not being sued under Title VII, but instead, in his individual capacity as an "aider and abettor" within the meaning of NYSHRL 296(b). (See Complaint ¶ 9) Plaintiff reiterates his position that Defendant Gray is not being sued under Title VII - a fact which renders Defendants' position moot.

POINT IV

PLAINTIFF'S CLAIMS ARE TIMELY

**A. Plaintiff's Title VII Claims**

As Your Honor explained in <u>Taylor</u>, "[a] discrete discriminatory or retaliatory act 'which is not made the basis for a timely charge is the legal equivalent of a[n] . . . act which occurred before the statute was passed.'" <u>Taylor</u>, 11-CV-3582 (JG), 2012 WL 5989874, at *5 (<u>citing</u> <u>United Air Lines v. Evans</u>, 431 U.S. 553, 558, (1977)). "But such an act 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'" <u>Taylor</u>, 11-CV-3582 (JG), 2012 WL 5989874, at *5 (<u>citing</u> <u>United Air Lines</u>, 431 U.S. at 558; <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 112 (2002)).

Here, Plaintiff filed his Charge of Discrimination with the EEOC on January 13, 2011. (<u>See</u> Clark Decl. Ex. A)  Defendants therefore assert that any discriminatory or retaliatory acts occurring prior to March 19, 2010 (300 days prior to the filing of Plaintiff's Charge of Discrimination) are untimely.  In making this assertion, Defendants fail to acknowledge that the acts occurring prior to March 19, 2010 are relevant background evidence to support his timely claims.  Defendants' strict adherence to the statute of limitations period ignores the relevant case law and represents a disingenuous analysis which ignores controlling authority.

Similar to the case at bar, in <u>Taylor</u>, Your Honor held that prior "U" ratings issued to the plaintiff, "to the extent that [plaintiff] relie[d] on these 'prior acts as background evidence' to support her timely claims, [] may be considered in evaluating the sufficiency of those claims." <u>Taylor</u>, 11-CV-3582 (JG), 2012 WL 5989874, at *5 (citing <u>Morgan</u>, 536 U.S. at 113).

Accordingly, the Court is within its discretion to properly consider any and all acts occurring prior to March 19, 2010, which Plaintiff referenced in his EEOC Charge of Discrimination and Amended Complaint, including the following:

- In or around 2007 or 2008 Defendant Gray issued Plaintiff a "U" rating after rejecting a doctor's note provided by Plaintiff requiring that Plaintiff instead provide a new doctor's note signed by his doctor and listing his medical identification number - information which is not normally required for a doctor's note;
- Plaintiff was issued a "U" rating for taking time off to attend his grandmother's funeral after she passed away on January 23, 2007 because Plaintiff, in light of his Jewish religion, could not meet Defendant Gray's demand for a Mass card. Plaintiff also could not meet Defendant Gray's unreasonable demand for a copy of his mother's driver's license and birth certificate;
- On February 4, 2008, Defendant Gray disciplined Plaintiff for wearing a yarmulke;
- In April 2008 Defendant Gray called Plaintiff's personal phone and threatened him for complaining to the Superintendent regarding Defendant Gray's conduct;
- In March 2009, Defendant Gray yelled to Plaintiff in front of co-workers, in a sarcastic manner, "if you don't eat the kosher food, you will go to Hell";
- On January 21, 2010, Plaintiff was required to attend a disciplinary meeting with Defendant Gray because he allegedly left school grounds without signing out; and
- On February 25, 2010, Defendant Gray intentionally and fraudulently altered Plaintiff's time and attendance records to reflect more frequent instances of lateness by Plaintiff in order to justify the imposition of employee discipline.

These pre-March 19, 2010 acts are background evidence for the post-March 19, 2010 acts listed in Plaintiff's EEOC Charge of Discrimination and Amended Complaint, which are as follows:

- On March 23, 2010 Defendant Gray issued Plaintiff a disciplinary memorandum for allegedly being late seventeen (17) times.
- On April 21, 2010 Defendant Gray issued Plaintiff disciplinary memorandum regarding his alleged lateness and absenteeism.
- Defendant Gray issued Plaintiff a "U" rating for the 2009-2010 school year due to his attendance.
- On June 18, 2010 Defendant Gray issued Plaintiff a "U" rating for his Annual Performance Review for the 2009-2010 school year.
- The DOE ordered Plaintiff's pay frozen from July 1, 2010 through June 2011 and barred Plaintiff from all coaching positions and earning any per session employment.
- On October 13, 2010, Defendant Gray failed to appear at the conference scheduled before the DOE to discuss Plaintiff's complaints of discrimination and retaliation.
- On January 11, 2011, the date of the re-scheduled conference, Defendant Gray appeared via telephone four (4) hours after the scheduled start time.

- On January 11, 2011, Defendant Gray gave his final determination to issue a "U" rating ruining Plaintiff's perfect scholastic ten (10) year "Satisfactory" rating record.
- On February 23, 2011, the January 11, 2011 "U" rating was memorialized in a letter from the DOE to Plaintiff.
- In September 2011, Plaintiff's teaching assignment was changed and he was scheduled to lose his former position during the DOE school "transformation."

All of the pre-March 19, 2010 acts constitute background evidence relied upon by Plaintiff to support his timely post-March 19, 2010 claims of discrimination and retaliation. These acts cannot be considered "discrete retaliatory act[s]" like the "U" rating cited in Taylor as an act of retaliation. Taylor, 11-CV-3582 (JG), 2012 WL 5989874, at *5. Specifically, they provide the history of Defendant Gray's discriminatory and retaliatory behavior with respect to Plaintiff and the pretextual discipline Plaintiff consistently faced. These acts lead up to, and likely influenced, Defendant Gray's decision to issue Plaintiff a "U" rating for the 2009-2010 school year.

Hence, based upon the foregoing, Plaintiff's claims of acts occurring prior to March 19, 2010 do not warrant dismissal under Title VII.

## B. Plaintiff's NYSHRL and NYCHRL Claims

While Plaintiff's NYSHRL and NYCHRL claims against Defendant DOE were filed after the time period provided by New York Education Law § 3813, Plaintiff maintains timely claims against Defendant Gray.

New York Education Law "Section 3813(2–b) makes clear that its one-year statute of limitations does not apply to every employee of a school district or board of education, but only those individuals referenced in Section 3813(1), i.e., 'officer[s] of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four . . . .'" Edwards v. Jericho Union Free School Dist., 904 F. Supp. 2d 294, 303 (E.D.N.Y. 2012) (citing

N.Y. Educ. Law § 3813(1), (2–b)). "It is well-settled that school principals . . . are not 'officers' of the District or Board within the meaning of the statute." <u>Edwards</u>, 904 F. Supp. 2d at 303 (citing <u>Rosenberg v. City of New York</u>, 2011 WL 4592803, at *16 (E.D.N.Y. Sept. 30, 2011) (principal and assistant principal are not officers under Section 3813(1)); <u>Lewinter v. N.Y. City Dep't of Educ.</u>, 2010 WL 2746334, at *7 (S.D.N.Y. July 9, 2010) (same); <u>Spencer v. City of New York</u>, 2007 WL 1573871, at *3 (S.D.N.Y. May 30, 2007) (same)).

Since Defendant Gray, as a principal, is not covered by the statute, Plaintiff maintains timely NYSHRL and NYCHRL claims against him.

**POINT V**

**PLAINTIFF MAINTAINS VIABLE NYSHRL AND NYCHRL CLAIMS AGAINST INDIVIDUAL DEFENDANT GRAY**

As set forth in Point IV above, the New York Education Law does not apply to Defendant Gray as a principal. Likewise, the notice of claim requirement under Section 3813(1) of the Education Law does not apply to Defendant Gray.

"[T]he notice requirements set forth in Section 3813(1) apply only to 'officers' of a school district or board of education . . . . [S]chool principals do not constitute 'officers' within the meaning of Section 3813(1), and, thus, the notice of claim requirements set forth in that statute do not apply . . . ." <u>Edwards</u>, 904 F. Supp. 2d at 303 (citing <u>Lewinter</u>, 2010 WL 2746334 at *7; <u>Spencer</u>, 2007 WL 1573871 at *3).

Therefore, Plaintiff's maintains his NYSHRL and NYCHRL claims against Defendant Gray.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendants

pending motion to dismiss with prejudice and refer the matter to Magistrate Judge Pohorelsky for

discovery.

Dated: February 7, 2014
       Bohemia, New York

**ZABELL & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*

By: _____

Saul D. Zabell
Zabell & Associates, P.C.
One Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
szabell@laborlawsny.com

24