UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL HERLING,

       Plaintiff,

  - versus -

NEW YORK CITY DEPARTMENT OF
EDUCATION and CARLSTON GRAY,

      Defendants.

**MEMORANDUM
AND ORDER**

13-cv-5287

A P P E A R A N C E S :

   ZABELL & ASSOCIATES, P.C.
    1 Corporate Drive
    Suite 103
    Bohemia, NY 11716
   By: Saul D. Zabell
    *Attorneys for Plaintiff*

   ZACHARY W. CARTER
   Corporation Counsel for the City of New York
    100 Church Street, Room 2-122
    New York, NY 10007
   By: Shawn Matthew Clark
    *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

    Russell Herling, a high school physical education teacher, commenced this action

against his employer, the New York City Department of Education ("DOE"), and Carlston Gray,

his direct supervisor, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. ("Title

VII"), New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*, and New York

City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*  Herling alleges

that defendants violated Title VII and the city and state human rights laws by discriminating

against him on the basis of his race and religion, and by retaliating against him for complaining

about this discrimination to the school superintendent and his union. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. I heard oral argument on April 10, 2014. For the reasons stated below, defendants' motion is granted as to plaintiff's retaliation claim and denied as to all of plaintiff's other claims.

BACKGROUND

A. *Factual Allegations*

Herling's amended complaint alleges the following facts, which I assume to be true for purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Herling, a Caucasian, Jewish male, started working for the DOE in September 2001 as a physical education teacher at the William E. Grady Career/Technical High School ("Grady High School") in Brooklyn. Am. Compl. ¶ 13-15. At all times relevant to this action, Herling was directly supervised by the school's principal, defendant Carlston Gray, who is African-American and not Jewish. *Id.* ¶ 16.

On January 23, 2007, Herling's grandmother passed away. *Id.* ¶ 42. Herling requested permission to miss work for several days, and presented Gray with a note from the funeral director in support of this request. *Id.* ¶¶ 42-43. Gray rejected the note and instead demanded Herling provide a card from a religious "Mass" in order to excuse his absences, *id.* ¶ 44, even though Gray knew that Jewish funerals do involve "Mass" cards. *Id.* ¶ 46. Gray later requested, in lieu of a Mass card, a copy of Herling's grandmother's driver's license and birth certificate in order to approve Herling's time off, which Herling could not provide. *Id.* As a result, after Herling took these days off, Gray disciplined him by issuing him an evaluation of "unacceptable" ("U"). *Id.* ¶ 47. Similarly situated non-Jewish employees were not required to provide this type of documentation to attend the funeral of a family member. *Id.* ¶ 48.

2

At some point during his employment, Gray issued Herling a "U" because Herling presented a doctor's note to excuse time off that did not contain Herling's medical identification number. *Id.* ¶ 33. Such information is normally not required to be on a doctor's note. *Id.* ¶ 34. Similarly situated African-American employees were not required to provide detailed documentation to substantiate medical absences and were not issued negative evaluations due to medical absences corroborated by a doctor. *Id.* ¶ 35. For example, during the 2009-2009 school year, a similarly situated African-American coworker, Dawn Watson,[1] was absent for six weeks and was issued a satisfactory ("S") rating. *Id.* ¶ 36.

On February 4, 2008, Gray disciplined Herling for wearing a yarmulke, and ordered Herling to remove it, in spite of being told by Herling that it was required by his faith. *Id.* ¶¶ 49-50. Gray told Herling to instead wear a kuffi, indicating to Herling that he would not be disciplined for wearing a kuffi instead of a yarmulke. *Id.* ¶ 51. Gray threatened to discipline Herling – including calling for Herling's termination – if Herling continued to wear a yarmulke instead of a kuffi. *Id.* ¶ 52. Additionally, on at least one occasion in March 2009, while Herling was eating at the kosher food table, Gray sarcastically yelled at Herling in front of other employees that "If you don't eat the kosher food, you will go to Hell." *Id.* ¶ 57.

In April 2008, Herling complained about Gray's discriminatory conduct to Superintendent Linda Waite. *Id.* ¶ 53. Waite informed Gray about Herling's complaint, and Gray called Herling on his personal phone and told him not to contact Waite again, "or else." *Id.* ¶ 54. Herling also complained to his union representative and union delegate around this time, and on numerous occasions these union officials complained to Gray about his discrimination against Herling. *Id.* ¶ 55.

_____

[1] The Amended Complaint identifies her as "Heather Watson." Am. Compl. ¶ 36. However, in his papers in opposition to the motion, Herling states that her name is actually Dawn Watson. Pl. Mem. in Opp. at 4 n.1.

On March 5, 2009, Herling was reprimanded and received a write-up from Gray. *Id.* ¶ 39. Gray alleged that Herling had failed to provide tutoring services to students during his mandatory assigned tutoring period. *Id.* Herling, however, had been ready and willing to provide tutoring, but no students had chosen to utilize his tutoring services on the day in question. *Id.* An African-American teacher, Helema Pierce, also did not have students present during her tutoring session at the same time that day, but she did not receive a reprimand or a write-up. *Id.* ¶ 40.

In September 2009, Gray again reprimanded Herling and issued him a write-up for passing a student who Gray alleged had been absent 37 times. *Id.* ¶ 37. In fact, the student had only been absent seven times, and Herling believes that his African-American co-workers who also issued the student a passing grade were not disciplined. *Id.* ¶ 38.

On January 21, 2010, Herling was required to attend a disciplinary meeting with Gray because Gray alleged that Herling had left school grounds without first signing out. *Id.* ¶ Herling had signed out before leaving the school. *Id.* Herling alleges that on February 25, 2010, Gray altered Herling's time and attendance record to reflect that Herling was late more times than he actually was, which led to Herling being disciplined by Gray and by the DOE Office of Labor. *Id.* ¶¶ 24-25. Ultimately, based on the allegedly altered records, Herling received a disciplinary memorandum in his personnel file stating that he was late 17 times over the 2009-2010 school year. *Id.* ¶ 27. Similarly situated African-American co-workers who were late more often than Herling were not subjected to similar discipline. *Id.* ¶ 29.

On June 18, 2010, Gray issued Herling a "U" on Herling's Annual Professional Performance Review for the 2009-2010 school year. *Id.* ¶ 59. Herling had received "S" ratings for each of the preceding ten school-years. *Id.* ¶ 70. As a result of receiving the "U" on his

annual performance review, for the period of July 1, 2010, through June 2011, Herling's pay was frozen by the DOE, and Herling was barred from all coaching positions and from conducting per-session after-school activities and summer workshops. *Id.* ¶ 61. Herling applied for numerous after-school per-session activities, but Gray awarded these positions to less qualified African-American substitute teachers. *Id.* ¶ 62. This "U" rating for the 2009-2010 school-year put Herling in jeopardy of losing his teaching license because a second consecutive "U" rating results in the loss of license. *Id.* ¶ 65.

Herling "regularly complained" about Gray's discrimination and retaliation against him. *Id.* ¶ 66. These complaints led to a conference with DOE officials being scheduled on October 13, 2010, which Gray and Herling were supposed to attend. *Id.* Gray, however, did not appear. *Id.* ¶ 67. Herling again complained to the DOE about Gray's actions, and the conference was rescheduled for January 11, 2011. *Id.* ¶ 69. At this conference, Herling complained to DOE officials and union representatives about Gray's discriminatory treatment and retaliatory actions against Herling. *Id.* Gray "gave his final decision to issue [Herling] a 'U' rating" at this conference. *Id.* ¶ 70.

In September 2011, Herling's teaching assignment was changed and he was scheduled to lose his position during a DOE "transformation" of Grady High School. *Id.* ¶ 73. During the transformation, teachers with current "U" ratings were slated to lose their positions and teachers with a "U" rating in the last five years were to be relegated to substitute teacher positions. *Id.* However, Herling remained employed with the DOE and was not demoted to a substitute teaching position. *Id.*

B.  *Procedural History*

On January 13, 2011, the U.S. Equal Employment Opportunity Commission ("EEOC") received a Charge of Discrimination from Herling.  ECF No. 13, Clark Decl. Ex. A, at 2.  Thereafter, Herling received a letter from the U.S. Department of Justice, dated July 9, 2013, informing him of his right to sue.  Am. Compl. Ex. 1.  Herling filed the instant action in the Supreme Court of New York, County of Nassau, on August 12, 2013.  On September 23, 2013, the defendants removed the action to the Eastern District of New York.  ECF No. 1.  The case was originally assigned to Judge Leonard Wexler in our Central Islip courthouse, but by order dated November 22, 2013, Judge Wexler directed that the case be reassigned to the Brooklyn courthouse, and I was assigned as the judge on November 25, 2013.  *See* ECF Order Reassigning Case, Nov. 25, 2013.  Defendants filed this motion to dismiss on January 17, 2014.  ECF No. 12. I heard oral argument on April 11, 2014.

## DISCUSSION

A.  *The Standard of Review*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012).  In making this determination, a court should assume all well-pleaded allegations in the complaint to be true "and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above a speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citation omitted)). However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

B. *Exhaustion of the Allegations*

Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing a charge with the EEOC or an equivalent state or city agency. 42 U.S.C. § 2000e–5(e); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (exhaustion is not a jurisdictional prerequisite but an "essential" precondition to bringing a Title VII claim in federal court). To be timely, the plaintiff must file his administrative complaint within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).

The requirement that administrative remedies be exhausted is designed to allow the administrative agency to investigate the claims and take remedial action. *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985). Thus, "a plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001). Newly asserted claims that are based on conduct alleged to have occurred prior to the filing of the EEOC charge, are considered "reasonably related" if the claims would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993) superseded by statute on other grounds as recognized in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998); *see also Deras v. Metro. Transp. Auth.*, 2013 U.S. Dist. LEXIS 40456, at *10 (E.D.N.Y. Mar. 22, 2013).

Defendants argue that Herling failed to exhaust his claims with respect to his allegations that his pay was "frozen" and that he was barred from earning per-session employment from July 1, 2010, through June 2011 since these allegations were not included in Herling's EEOC charge. I conclude, however, that because Herling alleges that these actions were automatically triggered by Herling's "U" evaluation for the 2009-2010 school year – a claim that was included in his EEOC charge – these allegations would fall within the scope of an EEOC investigation of the raised claims. Accordingly, such allegations are "reasonably related" to the claims Herling raised with the EEOC and are exhausted. *See Butts*, 990 F.2d at 1402.

C. *The Timeliness of Herling's Claims*

As noted above, to be timely, a plaintiff must file his or her administrative complaint within 300 days after the alleged unlawful employment practice took place. 42 U.S.C. § 2000e–5(e). "[O]nly events that occurred during the 300-day period prior to filing [the charge] . . . are actionable under Title VII." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). A discrete discriminatory or retaliatory act "which is not made the basis for a timely charge is the legal equivalent of a[n] . . . act which occurred before the statute was passed." *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977). However, an act alleged to have occurred outside the 300-day time period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Id.*; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, because Herling filed his charge of discrimination with the EEOC on January 13, 2011, any claims regarding acts that occurred before March 19, 2010, are barred as untimely, but may be considered as background evidence in support of his timely claims. *See Taylor v. New York City Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *5 (E.D.N.Y. Nov. 30, 2012).

Specifically, the following claims are time-barred: Gray issuing Herling a "U" rating for attending his grandmother's funeral services in 2007; Gray disciplining Herling in 2008 for wearing a yarmulke; Gray calling Herling's personal phone to warn him against further complaints to Superintendent Waite in 2008; Gray commenting to Herling that if he does not eat kosher food he will "go to Hell" in 2009; Gray disciplining Herling in January of 2010 for allegedly leaving school grounds without signing out; and Gray altering Herling's time and attendance records in February of 2010.

D. *Sufficiency of the Allegations*

1. *Discrimination*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002)). On a motion to dismiss, a plaintiff need not plead all the facts necessary to establish a prima facie case, but must satisfy Federal Rule of Civil Procedure 8 by making "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Twombly*, 550 U.S. at 547 (explicitly affirming the *Swierkiewicz* pleading standard for employment discrimination cases).

The defendants do not dispute that Herling belongs to a protected class or is qualified for his position. Rather, they contend that Herling has not sufficiently alleged that he suffered an adverse employment action or that he suffered such an action under circumstances giving rise to an inference of discriminatory intent.

a. *Adverse Employment Action*

The Second Circuit defines an adverse employment action as a "'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). For a change to be considered materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry,* 336 F.3d at 138). Examples of such changes include "termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (citation and internal quotation marks omitted).

In general, negative performance evaluations or ratings, written reprimands and disciplinary meetings do not constitute adverse employment actions. *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) *aff'd sub nom. Browne v. Queen's Coll. City Univ. of New York*, 202 F. App'x 523 (2d Cir. 2006) (collecting cases). However, a negative evaluation or reprimand is considered an adverse employment action if it is accompanied by an adverse result such as a "demotion, diminution of wages, or other tangible loss." *Id.*; *Taylor*, 2012 WL 5989874, at *7 ("Negative performance evaluations or ratings may,

'in some circumstances, constitute adverse employment action,' but they must trigger negative consequences to the conditions of employment to qualify as such.") (quoting *Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010)).

Herling alleges that the "U" rating he received from Gray for the 2009-2010 school year constitutes an adverse employment action because it was accompanied by a pay-freeze and served to bar Herling from earning per-session wages. I agree. The denial of a raise or bonus that an individual is entitled to or expects to receive as a matter of course constitutes "a materially adverse change in the terms and conditions of employment and constitutes an adverse employment action." *Davis v. New York City Dep't of Educ.*, No. 10-CV-3812, 2014 WL 917142, at *7 (E.D.N.Y. Mar. 7, 2014); *see also McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 407 (E.D.N.Y. 2010) ("The combination of plaintiff receiving a negative evaluation in January 2006, being denied a salary increase, and being placed on a list of individuals to be 'managed out' is sufficient to create genuine issues of material fact as to whether plaintiff suffered an adverse employment action . . . ."); *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 545 (E.D.N.Y. 2003) ("It is well settled that the denial of a bonus or a merit increase do constitute a material adverse change"). Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may also constitute an adverse employment action. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (holding that preventing plaintiff from earning overtime and comp time and requiring only the plaintiff to request overtime in writing may constitute adverse employment action). Because these adverse actions were directly triggered by the "U" rating Herling received for the 2009-2010 school year, the negative evaluation itself may constitute an adverse employment action. *See Lawrence*, 389 F. App'x at 56.

Despite Herling's arguments to the contrary, the other write-ups and disciplinary actions taken against him do not constitute adverse employment actions because they were not accompanied by any negative consequences to the conditions of Herling's employment.  *See*, *e.g.*, *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) ("A negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action. However, negative evaluations, standing alone without any accompanying adverse results, are not cognizable.") (citations and internal quotation marks omitted).  Similarly, the theoretical repercussions that Herling lists from receiving the "U" rating for 2009-2010 – that he was "scheduled" to lose his position during the school transformation and that he may have difficulty finding employment in other school districts – do not constitute adverse employment actions.  *See Malone v. New York Pressman's Union No. 2*, No. 07-CV-9583, 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) ("The elimination of speculative, potential future opportunities is insufficient to establish an adverse employment action."); *Hernandez v. City of New York*, No. 11-CV-3521, 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) ("The mere fact that Plaintiff is facing possible termination . . . does not constitute an adverse employment action.").

b.  *Circumstances Giving Rise to an Inference of Discrimination*

A Title VII plaintiff may establish that an adverse employment action was undertaken with discriminatory intent in a variety of different ways depending on the specific facts of the case.  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001); *Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 232 (E.D.N.Y. 2010).  Here, Herling claims that he has sufficiently pled facts that give rise to the inference of discrimination based on Gray's

remarks to Herling relating to his religion and on the allegations that Herling was treated differently from similarly situated African-American, non-Jewish employees.  Pl. Mem. in Opp. at 11.

Stray remarks by a decision-maker, without more, are not sufficient to make out a case of employment discrimination.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). However, "[w]hen . . . other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray.'"  *Id.*  In order for the remarks to be considered significant, the plaintiff must show a nexus to the adverse employment decision and "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."  *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).

Title VII plaintiffs may also "raise a plausible inference of discrimination by alleging preferential treatment given to similarly situated individuals, [but] this method is allowed only if the alleged comparators are similarly situated in all material respects."  *Sank v. City Univ. of New York*, 10-CV-4975, 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011) (internal quotation and citations omitted).  The allegedly similar circumstances need not be identical, but "there should be a reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001).

Whether Gray's remarks establish an inference of discriminatory intent is a close question.  On the one hand, each remark was made more than a year before Herling was issued a "U" evaluation for the 2009-2010 school year in June 2010.[2]  On the other hand, Gray's comments to Herling were not the stray remarks of a colleague; Gray was Herling's immediate

_____

[2]     The incident involving Herling's grandmother's funeral occurred in January 2007; Gray's comments about Herling's yarmulke were made in February 2008; and Gray's statement about Herling needing to eat kosher food was made in March 2009.

supervisor and was directly responsible for deciding to issue Herling the overall "U" rating.

Compare *Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (holding that

alleged remarks by plaintiff's "immediate supervisor, who had enormous influence in the

decision-making process" were direct evidence of discriminatory animus), with *Ostrowski v. Atl.*

*Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992) (holding that "'stray' remarks in the workplace

by persons who are not involved in the pertinent decisionmaking process" are insufficient to

raise an inference of discriminatory intent).

Herling also alleges that similarly situated non-Jewish, African-American

coworkers with worse employment records did not receive "U" ratings for the 2009-2010 school

year. Am. Compl. ¶ 60. These allegations serve as an additional "indicia of discrimination" that

render Gray's comments significant. *See Danzer*, 151 F.3d at 56. It can reasonably be inferred

from the pleadings that these similarly situated co-workers held the same position as Herling and

were subject to the same disciplinary standards and procedures. *See Hernandez*, 2013 WL

593450, at *4 ("Examples of what constitutes [similarly situated in] a 'material respect' are

holding the same positions of roughly the same rank, and being subject to the same performance

review and disciplinary standards."). While the specifics of these allegedly similarly situated

coworker's employment records have not been provided, Herling has sufficiently alleged

disparate treatment that raises the necessary "minimal inference that the difference of treatment

may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.

2001).

In sum, drawing all reasonable inferences in Herling's favor, I conclude that

Herling sufficiently alleges facts that make an inference of discriminatory intent plausible under

the standard set forth in *Twombly* and *Iqbal*. His allegations of disparate treatment of similarly

situated non-Jewish coworkers, in combination with Gray's remarks, "nudge [his] claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. Accordingly, defendants' motion to dismiss this claim is denied.

### 2. *Retaliation*

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, an employee must demonstrate that (1) he participated in a protected activity known to defendant; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Terry*, 336 F.3d at 141 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)). As with a discrimination claim, a plaintiff need not plead facts sufficient to establish a prima facie case of retaliation to survive a motion to dismiss. *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) ("The *Swierkiewicz* holding applies with equal force to any claim, including retaliation claims . . . ."). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, 534 U.S. at 511.

Defendants contend that Herling has failed to sufficiently plead a causal connection between his protected activity and the adverse employment action he suffered. Defs. Mem. at 12.

### a. *Protected Activity*

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.

2000). Herling alleges that he engaged in protected activity when he complained to Superintendent Waite and his union representative in April 2008 about Gray's discriminatory conduct. Herling also alleges that he "regularly complained of unlawful discrimination and retaliation at the hands of Defendant Gray which led to the scheduling of a conference on October 13, 2010 before the DOE." Am. Comp. ¶ 66. The April 2008 complaints to Waite and the union plainly constituted protected activity. The latter allegation, however, is too vague and conclusory to constitute protected activity as Herling fails to specify when he lodged these complaints, who he complained to, and whether Gray knew about these complaints.

        b. *Adverse Employment Action*

The "standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010) (citing *White*, 548 U.S. 53 (2006)). While a discrimination claim must demonstrate adverse actions affecting the terms and conditions of employment, a retaliation claim may be based on "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and employers." *White*, 548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). The Second Circuit has found that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities" may qualify as adverse employment actions for purposes of a retaliation claim. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotations and citations omitted). However, they have generally declined to extend that holding

to include "[r]eprimands, threats of disciplinary action, and excessive scrutiny." *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006); *Gentile v. Potter*, 509 F. Supp. 2d 221, 242 (E.D.N.Y. 2007).

In the context of his retaliation claim, Herling has sufficiently pled that in addition to his receipt of an overall "U" rating for the 2009-2010 school year, the disciplinary "write-ups" and "memorandums" that Herling received from Gray in March and September of 2009 and March and April of 2010 also qualify as adverse employment actions.

c. *Causal Connection*

A plaintiff may establish a causal connection between his protected activity and an adverse employment action either (1) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment," or by evidence of disparate treatment of similarly situated employees, or (2) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

The adverse employment actions suffered by Herling are too distant in time from the protected activity he engaged in to plausibly establish the requisite causal connection. As noted above, the only protected activity properly alleged by Herling took place in April 2008, when he complained to Superintendent Waite and the union. After he made these complaints, Herling did not suffer an allegedly retaliatory employment action until nearly a year later, in March 2009. Generally, the cases that "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (defining "causal connection" in context of motion

for summary judgment) (internal quotation marks omitted); *see also Altieri v. Albany Pub. Library*, 172 Fed. App'x 331, 333 (2d Cir. 2006) (applying *Breeden*'s standard for "causal connection" to motion to dismiss). While the Second Circuit has not specified how close in time protected activity and a retaliatory act must be in order to support causation, it has held that an "almost" one-year gap "undermin[ed] any causal nexus based on temporal proximity." *Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007); *see also Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011) (holding a 15-month gap is "much too temporally removed to support the inference" of causation); *Richardson*, 180 F.3d at 447 (two-year gap between complaint and discharge insufficient to prove causation); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation.").

I conclude based on the lack of temporal proximity that Herling does not plausibly allege facts that give rise to an inference of a causal connection between his complaint to the Superintendent and the adverse employment action he suffered.[3] Accordingly, defendants' motion to dismiss this claim is granted.

---

[3] Herling's counsel essentially conceded at oral argument that the complaint does not plausibly plead the necessary causal connection under *Twombly* and *Iqbal*.

> THE COURT: . . . And my concern with your retaliation claim is it's – what is it, March 2008, April 2008, the complaint to the superintendent?
> MR. ZABELL: I believe March.
> THE COURT: Okay. Then the EEOC complaint is filed in 2011, right?
> MR. ZABELL: Yes.
> THE COURT: So any retaliation claim is not – doesn't strike me as exhausted unless it occurs after that March 2010 date, your adversary mentioned, correct?
> MR. ZABELL: Yes.
> THE COURT: And if it occurred after that date, that means it's separated in time by two years from the protected activity. You got a big uphill battle.
> MR. ZABELL: I understand that.
> . . .
> MR. ZABELL: . . . There was a time where temporal proximity wasn't limited to just a few months before the incident. As our courts get flooded with these claims, it seems that the window on temporal proximity has been tightening or closing. Is it conceivable that somebody can complain about discrimination two years ago and when it comes time

E. *Title VII Claims Against Gray*

It is well settled that individuals are not subject to liability under Title VII. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)). Therefore, Herling's Title VII claims against Gray are dismissed.[4]

F. *NYHRL and NYCHRL Claims*

Herling also asserts discrimination and retaliation claims pursuant to NYHRL and NYCHRL. Defendants argue that these claims must be dismissed because they (1) are time-barred and (2) fail to comply with a notice of claim requirement.

1. *Timeliness*

New York Education Law § 3813(2-b) establishes a one-year statute of limitations for an action against any "entity specified in [§ 3813(1)]." N.Y. Educ. Law § 3813(2-b). Section 3813(1) lists, among other entities, "any school district, board of education, board of cooperative educational services . . . or any officer of a school district, board of education, board of cooperative educational services, or school." *Id.* § 3813(1). Herling concedes that his NYHRL and NYCHRL claims against the DOE were brought more than one year after the cause

---

for somebody to act on it, somebody remembers that complaint and causes a decision to be made, that is retaliatory? In my mind, and I certainly understand that my mind is not the only mind out there and there are plenty of people that disagree with me, some of them are even judges, but in my mind it's not inconceivable. So the two years in time to allege a retaliatory act is not inconceivable.

THE COURT: You're right. And under *Conley versus Gibson*, you win. But we're not there anymore.

MR. ZABELL: I know. Bring us back there, Judge.

Tr. of Oral Arg., at 12-14, April 10, 2014.

[4] Herling's counsel explained in his brief in opposition to the motion that, despite the language of the amended complaint, he is not seeking to bring Title VII claims against Gray in his individual capacity. Pl. Mem. in Opp. at 19. Specifically, counsel clarified that Gray is being sued in his individual capacity only as an aider and abettor under NYHRL § 296(b). *Id.*

of action accrued and thus are time-barred.[5] Pl. Mem. in Opp. at 22. Accordingly, these claims are dismissed as untimely.

Herling's NYHRL and NYCHRL claims against Gray, on the other hand, are not time-barred since the one-year statute of limitations of § 3813(2-b) "does not apply to every employee or a school district or board of education, but only those individuals referenced in Section 3813(1), i.e., 'officer[s] of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four . . . .'" *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 303 (E.D.N.Y. 2012) (quoting N.Y. Educ. Law § 3813(1), (2–b)). School principals "are not 'officers' of the District or Board within the meaning of the statute" and thus not subject to the one-year statute of limitations. *Id.* (collecting cases); *see also Rosenberg v. City of New York*, No. 09-CV-4016, 2011 WL 4592803, at *16 (E.D.N.Y. Sept. 30, 2011) (principal and assistant principal are not officers under Section 3813(1)); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 367 (W.D.N.Y. 2010) ("The Court agrees, based on its reading of § 3813(1), that a principal is not a school officer."); *Lewinter v. New York City Dep't of Educ.*, No. 09-CV-227, 2010 WL 2746334, at *7 (S.D.N.Y. July 9, 2010) (same); *Spencer v. City of New York*, No. 06-CV-2852, 2007 WL 1573871, at *3 (S.D.N.Y. May 30, 2007) (same). Accordingly, Herling's NYHRL and NYCHRL claims against Gray were timely filed as they are governed by New York's three-year statute of limitations that applies to state law claims of discrimination. *See Edwards*, 904 F. Supp. 2d at 303.

2. *Notice of Claim Requirement*

Defendants also move to dismiss Herling's NYHRL and NYCHRL claims on the grounds that he failed to adequately plead that he served a proper notice of claim, as required by

---

[5]     The most recent act that Herling complains of occurred in September 2011.

§ 3813(1). Ultimately, however, the adequacy of Herling's pleading on this point is irrelevant because the only NYHRL and NYCHRL claims remaining are those asserted against Gray, and like the one-year statute of limitations requirement of § 3813(2-b), the notice requirements in § 3813(1) apply only to "officers" of a school district or the Board of Education. As set forth above, school principals do not constitute "officers" within the meaning of § 3813(1), and, thus, the notice of claim requirements do not apply to the claims asserted against Gray. *See Edwards*, 904 F. Supp. 2d at 303; *Lewinter*, 2010 WL 2746334, at *7; *Spencer*, 2007 WL 1573871, at *3.

      3.  *Aiding and Abetting*

      Defendants further allege that Herling's claim against Gray as an aider and abettor pursuant to NYHRL § 296(6) should be dismissed because Gray cannot be held liable for aiding and abetting his own conduct. Section 296(6) provides that "it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (citing N.Y. Exec. Law § 296(6)). The Second Circuit held in *Tomka v. Seiler Corp.*, that an employee who "actually participates in the conduct giving rise to a discrimination claim," may be held liable under § 296(6). 66 F.3d 1295, 1317 (2d Cir. 1995); *see also Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 425-26 (E.D.N.Y. 2008). Although the soundness of this holding has been questioned, "until the Second Circuit revisits the issue, *Tomka* is the law in this circuit. Accordingly, [a defendant] may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability." *Tully-Boone*, 588 F. Supp. 2d at 427 (internal quotation and citation omitted); *Kalp v. Kalmon Dolgin Affiliates of*

*Long Island Inc.*, No. 11-CV-4000, 2013 WL 1232308, at *11 (E.D.N.Y. Mar. 27, 2013) (same);

*Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 262 (E.D.N.Y. 2009) (same).

Accordingly, in light of *Tomka*, liability may be imposed on Gray under the

NYHRL on an aiding and abetting theory even if he is the only person who acted wrongfully.

*See Kalp*, 2013 WL 1232308, at *11.  As such, defendants' motion to dismiss this claim is

denied.

CONCLUSION

For the reasons explained above, defendants' motion to dismiss is granted as to

Herling's retaliation claim and denied as to all other claims.

So ordered.


John Gleeson, U.S.D.J.


Dated:  April 23, 2014
        Brooklyn, New York