UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL HERLING,

                              Plaintiff,                    Case No.: 13-CV-05287 (JG) (VVP)

          – against –

NEW YORK CITY DEPARTMENT OF EDUCATION
and CARLSTON GRAY, as aider and abettor,

                              Defendants.


# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' MOTION *IN LIMINE*

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
szabell@laborlawsny.com

# TABLE OF CONTENTS

Table of Authorities .....……………………………………….................................... ii

Preliminary Statement ...……………………………………….................................... 1

Argument …………….....……………………………………….................................... 2

    Point I: Stephen LaMendola should be permitted to ……………………………. 2
    testify

    Point II: Defendants' position regarding alleged ...................................... 6
    "me too" evidence is incorrect

    Point III: Individual performance review ratings are ................................. 10
    admissible

    Point IV: The testimony of Chris Manos, …………..…………….….…………. 12
    Michael Guida, Taj Graham and Martin
    Rosenthal is admissible at trial

    Point V: Testimony and/or evidence about …………………………………... 15
    prior EEO complaints made or pending against
    Defendant Gray are admissible

    Point VI: Events subsequent to the 2009-2010 …………………………… 16
    "U" rating are admissible

Conclusion ..................................................................................................... 17

# TABLE OF AUTHORITIES

Federal Cases:

*Agence France Presse v. Morel,*
  293 FRD (S.D.N.Y. 2013) ……………………………………................... 3

*See Am. Stock Exch., LLC v. Mopex, Inc.,*
  215 F.R.D. (S.D.N.Y. 2002) …………………………………………….. 5

*Brown v. Daikin Am. Inc.,*
  756 F.3d (2d Cir. 2014) …….…………………………………………….. 9, 10

*Bynum v. Metro. Transp. Auth.,*
  01-cv-7945 (CLP), 2006 WL 6555106 (E.D.N.Y. 2006) ..................................... 1

*Carofino v. Forester,*
  450 F. Supp. 2d (S.D.N.Y. 2006) ……………………………………….. 7, 14

*Charles v. County of Nassau,*
  11-CV-2709 (MKB), 2015 WL 4530995 (E.D.N.Y. July 28, 2015) ...................... 2, 3

*Contreras v. Artus,*
  778 F3d (2d Cir. 2015) ………………………………………………….. 12

*Design Strategies, Inc. v. Davis,*
  228 F.R.D. (S.D.NY. 2005) ……………………………………....….…………...... 3

*Emmpresa Cubana Del Tabaco v. Culbro Corp.,*
  213 F.R.D. (S.D.N.Y. 2003) …………………………………………….. 3

*Graham v. Long Is. R.R.,*
  230 F.3d (2d Cir. 2000) …………………………………………….. 9

*Gutierrez v City of New York,*
  08-cv-6537 (LBS), 2012 WL 2357063 (S.D.N.Y. 2012) ……….................. 15

*Jockey Intern., Inc. v. M/V "LEVERKUSEN EXPRESS,"*
  217 F. Supp. 2d (S.D.N.Y. 2002) ……………………………………….. 3

*L-3 Communications Corp. v. OSI Sys., Inc.,*
  02-cv-9144 (PAC), 2006 WL 988143 (S.D.N.Y. 2006) ………………………….. 3

*Patterson v. Balsamico,*
  440 F. 3d (2d Cir. 2006) ………………………………………....…………...... 3

*People v. Giles,*
    11 N.Y.3d (2008) ................................................................ 12

*Perez v. Progenics Pharm., Inc.,*
    10-CV-08278 (LAP), 2015 WL 4111551 (S.D.N.Y. June 24, 2015) .............. 15

*Scott v. WPIX, Inc.,*
    10-cv-4622 (WHP), 2012 WL 2026428 (S.D.N.Y. 2012) ........................... 13, 15

*S.E.C. v. Tourre,*
    950 F. Supp. 2d (S.D.N.Y. 2013) .............................................. 12

*Setelius v. Natl. Grid Elec. Services LLC,*
    11-CV-5528 (MKB), 2014 WL 4773975 (E.D.N.Y. 2014) ........................ 9

*Shumway v. United Parcel Serv.,*
    118 F.3d 60 (2d Cir. 1997) ..................................................... 8-10

*Spulak v. K Mart Corp.,*
    894 F.2d (10th Cir. 1990) ...................................................... 15

*Tirado v. Shutt,*
    13-cv-2848 (LTS) (AJP), 2015 WL 6866265 (S.D.N.Y. Nov. 9, 2015) .............. 3

*Todaro v Siegel Fenchel & Peddy, P.C.,*
    04-cv-2939 (JS) (WDW), 2008 WL 682596 (E.D.N.Y. 2008) ...................... 15

*Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.,*
    726 F. Supp.2d (S.D.N.Y. 2010) ............................................... 5

*United States v. Dupree,*
    706 F. 3d (2d Cir. 2013) ....................................................... 12

*United States v. Gilan,*
    967 F.2d (2d Cir. 1992) ........................................................ 7

*Zubulake v. UBS Warburg LLC.,*
    382 F. Supp. 2d (S.D.N.Y. 2005) .............................................. 15

*523 IP LLC v. CureMD.Com,*
    48 F. Supp. 3d (S.D.N.Y. 2014) ............................................... 1, 5

## I. PRELIMINARY STATEMENT

Plaintiff, **RUSSELL HERLING** ("Plaintiff" or "Herling"), respectfully submits this memorandum of law in opposition to the November 27, 2015 motion *in limine* filed by Defendants **THE NEW YORK CITY DEPARTMENT OF EDUCATION and CARLSTON GRAY** ("DOE", "Gray" or "Defendants"). [ECF Doc. 70-1]

The facts of this case are clear and unambiguous. Faced with a record replete with objective, admissible evidence confirming Defendant Gray's overt, if not unapologetic, discriminatory agenda, Defendants are left with little choice but to mount a defense based solely upon evidentiary grounds. These efforts are unavailing because the arguments advanced in Defendants' motion *in limine* are insufficient to prevent certain testimony at trial. Defendants' position is not only belied by controlling precedent, but a plain reading of both the witness statements and corresponding deposition testimony. The fact remains, as it has since the onset of this litigation, Defendant Gray harbored a discriminatory animus against Plaintiff based upon his race and religion.

Defendant Gray's brazen actions were witnessed by numerous individuals in Defendant DOE's employ. These individuals, all of whom were or are his peers, were either deposed and/or set forth written, sworn statements in support of Plaintiff. The witnesses' identities, deposition testimony and content of the written statements was, at all times relevant to this dispute, known to the office of Defendants' counsel.

In light of the foregoing, and the arguments advanced below, Defendants' motion should be denied in its entirety and the case should proceed to trial without the imposition of advance evidentiary restrictions.

## II.    ARGUMENT

## POINT I

### STEPHEN LAMENDOLA SHOULD BE PERMITTED TO TESTIFY

No proper grounds exist to prevent Stephen LaMendola from testifying at trial. Defendants' arguments to the contrary fail because Mr. LaMendola's identity and the express content of his witness statements have been known by Defendants' counsel since May 2014. (Pl. Ex. 1-3)

Even if this were not the case, preclusion is not warranted. "Despite the apparently automatic nature of the Rule, district courts have discretion to impose sanctions other than preclusion." *Charles v. County of Nassau*, 11-CV-2709 (MKB), 2015 WL 4530995, at *9 (E.D.N.Y. July 28, 2015). Further, preclusion is an extreme sanction, and before being granted, courts must look at the actual difficulties the violation causes, and consider less drastic remedies. A failure to disclose can be considered harmless, so long as the opposing party has an opportunity to depose the witness before trial. *Bynum v. Metro. Transp. Auth.*, 01-cv-7945 (CLP), 2006 WL 6555106, at *2 (E.D.N.Y. 2006) (internal citations omitted).

While Mr. LaMendola's name was not included in Plaintiff's Rule 26 Disclosure Statement, one of his written statements was. (Pl. Ex. 1-2) The second statement was produced in discovery. (Pl. Ex. 3) Under Rule 37 of the Federal Rules of Civil Procedure, if a party fails to provide information or identify witnesses as required by Rule 26(a) or (e), the party may not use that information or witness to 'supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.' *Charles v. County of Nassau*, 11-CV-2709 (MKB), 2015 WL 4530995, at *9 (E.D.N.Y. July 28, 2015) (quoting Fed. R. Civ. P. 37(c)(1)). *See 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014). Here, based upon facts

specific to this dispute, the inadvertent omission of Mr. LaMendola's name from Plaintiff's Rule 26 Disclosure Statement was the very definition of "harmless".

"The Second Circuit has identified four (4) factors to be considered on a motion to preclude evidence pursuant to Rule 37: (1) the party's explanation for its failure to comply, (2) the importance of the testimony of the precluded witnesses or of the evidence, (3) any prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony or evidence, and (4) the possibility of a continuance." *Charles v. County of Nassau*, 11-cv-2709 (MKB), 2015 WL 4530995, at \*9 (E.D.N.Y. July 28, 2015). *See Tirado v. Shutt*, 13-cv-2848 (LTS) (AJP), 2015 WL 6866265, at \*2 (S.D.N.Y. Nov. 9, 2015); *Agence France Presse v. Morel*, 293 FRD 682, 685 (S.D.N.Y. 2013); *L-3 Communications Corp. v. OSI Sys., Inc.*, 02-cv-9144 (PAC), 2006 WL 988143, at \*4 (S.D.N.Y. 2006); *Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 212 (S.D.N.Y. 2005); *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003). *See also Patterson v. Balsamico*, 440 F. 3d 104, 117 (2d Cir. 2006).

Here, the exclusion of Mr. LaMendola's name was inadvertent. "Failure to comply with the mandate of the Rule [26 requirement] is harmless when there is no prejudice to the party entitled to the disclosure." *Jockey Intern., Inc. v. M/V ""LEVERKUSEN EXPRESS,"* 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002). As set forth below, Defendants' actual knowledge of Mr. LaMendola's identity and their being in possession of his witness statements since 2014 should preclude Defendants from claiming any form of prejudice.

Mr. LaMendola's anticipated testimony (based upon his written statements) has significant probative value in this case. As detailed in Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiff was subject to disparate treatment based upon his race and religion at the hands of Defendant Gray. Of particular note, we allege Defendant Gray

manipulated the DOE's policies and provisions regarding the imposition of employee discipline, specifically, with respect to teacher time and attendance records. On page 16 of Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment [ECF Doc. 54], we set forth a chart of similarly situated teachers, none of whom received overall "U", or unsatisfactory ratings despite time and attendance records which were comparable, if not worse than that of Plaintiff. The principal difference being these teachers are African-American, not Caucasian (and Jewish). Mr. LaMendola was the 2009-2010 Union Delegate for the United Federation of Teachers ("UFT"). In this capacity, he can authenticate excerpts from the collective bargaining agreement between Defendant DOE and the UFT which governed during times relevant to this dispute. Mr. LaMendola is not being relied upon for any proposition other than the fact Mr. Gray's actions; i.e., the use of unsigned letters of discipline and/or counseling memos being placed in Plaintiff's personnel file and his reliance upon unauthenticated time cards as a basis for employee discipline violate the collective bargaining agreement. In essence, Mr. LaMendola's anticipated testimony is rooted in Defendant DOE's procedures, not as to whether or not Mr. Gray acted in a racist or other discriminatory manner. Consequently, Mr. LaMendola's participation at trial is essential and carries significant probative weight.

Defendants' arguments aside, notions of prejudice do not apply because Mr. LaMendola's contributions at trial will not constitute new evidence and his expected testimony is already memorialized in his witness statement. The statement was annexed as an exhibit to both Plaintiff's Rule 26 Disclosure Statement dated May 14, 2014, and the amended version dated June 30, 2015. (*See* Pl. Ex. 1 & 2) Furthermore, the statement was included as an exhibit in Plaintiff's Response to Defendants' First Request for the Production of Documents dated September 11, 2014. (*See* Pl. Ex. 3) Lastly, and perhaps most telling is the fact Mr. LaMendola is mentioned by name by

Defendant Gray on three (3) separate instances during his April 8, 2015 deposition. (*See* Pl. Ex. 4) In light of these facts, all of which indisputable, Defendants will not be prejudiced by Mr. LaMendola testifying at trial.

Lastly, there exists no foreseeable need for a continuance in the event Defendants' motion with respect to this witness is ultimately denied. "The purpose of this rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014) (*quoting Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp.2d 339, 348 (S.D.N.Y. 2010)). *See Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). Again, the evidence is by no means new and Mr. LaMendola's participation hardly constitutes "sandbagging" on the part of this office. Plainly, Defendants had ample opportunity to depose Mr. LaMendola during the past eighteen (18) months, yet, for undisclosed reasons, chose not to do so.

In light of the foregoing, Fed. R. Evid. 401 and 403 plainly have no application with respect to this issue. Further, Defendants' arguments based upon Fed. R. Evid. 701 similarly fail. In his capacity as a UFT Delegate, Mr. LaMendola's duties resulted in his being familiar with the collective bargaining agreement. This familiarity will be helpful in resolving or clarifying Plaintiff's trial testimony regarding the appropriateness or motivation for Mr. Gray's use of unsigned or unauthenticated documents in the employee discipline process. In addition, Defendants preclude the possibility that under Fed. R. Evid. 901, Mr. LaMendola would be permitted to testify as a witness with knowledge that the provisions of the collective bargaining agreement are what Plaintiff claims them to be. We do not dispute that LaMendola's prior written statements are inadmissible pursuant to Fed. R. Evid. 802; however, their content may come in

through in the form of trial testimony. We can confirm we do not intend to affirmatively introduce the documents directly into evidence into evidence.

## POINT II

## <u>DEFENDANTS' POSITION REGARDING ALLEGED "ME TOO" EVIDENCE IS INCORRECT</u>

Defendants' position regarding a proffer of anticipated "me too" evidence from Messrs. Caligara and Manning is incorrect. The subject matter of each individual's anticipated testimony is already confirmed by witness statements and deposition testimony. (*See* Pl. Exs. 5-8)

Sufficient grounds do not exist to preclude Mr. Caligara from testifying at trial. First, his testimony about Mr. Gray's hiring of his son in violation of established protocol is not being proffered to establish a racial animus, but speaks to Mr. Gray's propensity, or lack thereof, for truthfulness. While cognizant of the general prohibition against the introduction of character evidence in a civil trial, like here, we submit Mr. Gray should not reflexively be afforded traditional evidentiary safeguards.

In point of fact, it was not Mr. Caligara alone who provided insight to this aspect of the case. Both Chris Manos and Plaintiff testified that Defendant Gray's son was employed at Grady High as a photographer, a position which constituted the desired per session work. (Pl. Ex. 10; Manos Dep. 20) (Pl. Ex. 11; Pl. Dep. 79-80) Plaintiff testified the opportunity was not posted prior to Mr. Gray's son being awarded the position. (Pl. Ex. 11; Pl. Dep. 79-80) Mr. Caligara testified that Mr. Gray's biological son has a different last name than he does and that he and his son were observed together at Grady High (Pl. Ex. 5; Caligara Dep. 36) Tellingly, at deposition, Defendant Gray acknowledged having been accused of improperly employing his son, but that he has not done so. (Pl. Ex. 4; Gray Dep. 24) It is this affirmative denial which forms, what we believe, the proper avenue for an examination of Mr. Gray's propensity for truthfulness. "All evidence tending

to demonstrate a defendant's liability, by its nature, will be prejudicial in some respect to the Defendant; Rule 403 is designed to exclude only unfair prejudice." *Carofino v. Forester*, 450 F. Supp. 2d 257, 273 (S.D.N.Y. 2006). The mere existence of competing sworn testimony alone, in our view, places credibility at central issue in this case, particularly relating to a witnesses propensity for truthfulness.

Defendants' arguments regarding Mr. Caligara and Mr. Gray's kosher food comment are unavailing. First, Mr. Caligara is not a comparator of Plaintiff on religious grounds. There is no evidence in the record that Mr. Caligara is Jewish, or observes the tenets of the Jewish faith. His testimony regarding Mr. Gray's kosher comment does not constitute "me too" evidence; Mr. Caligara was physically present and heard the comment upon issuance. In addition to Mr. Caligara, Mr. Gray's kosher comment was witnessed by Michael Guida and Taj Graham. (Pl. Exs. 12-13) Importantly, at deposition, Mr. Gray denied making the comment or ever having such a conversation with Plaintiff regarding kosher food. (Pl. Ex. 4; Gray Dep. 50-51) There is no suggestion in the record that Mr. Caligara claims harm or injury at the hands of Mr. Gray based upon this comment, he simply witnessed Mr. Gray's discriminatory act.

"The Supreme Court, in *Huddleston v. United States*, outlined the following four-part test for the admission of other acts evidence under Rule 404(b): First, the evidence must be introduced for a proper purpose, such as proof of knowledge or identity. Second, the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b). Third, the evidence must satisfy the probative-prejudice balancing test of Rule 403. Fourth, if the evidence of other acts is admitted, the district court must, if requested, provide a limiting instruction for the jury." *Carofino v. Forester*, 450 F. Supp. 2d 257, 271-72 (S.D.N.Y. 2006) (quoting *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992).

Plaintiff satisfies the requirements for admissibility. Unlike the kosher food comment, Mr. Caligara was harmed by Mr. Gray when, after he was issued a "U" rating, his "retention rights" to the boys' soccer coaching position were voided and Mr. Gray replaced him with Stenrick Adams who is African American. (Pl. Ex. 5; Caligara Dep. 20-22) In addition to Mr. Caligara, Defendant Gray issued "U" ratings to the following coaches, the existence of which precluded them from per session coaching opportunities: track, soccer, basketball and junior varsity basketball. (Pl. Ex. 11; Pl. Dep. 76, 82) (Pl. Ex. 5; Caligara Dep. 13-14, 21-24, 27) Caucasian teachers performing per session coaching work were singled out and subject to heightened scrutiny by Defendant Gray. (Caligara Dep. 28) All of the teachers who received these "U" ratings were Caucasian and they were replaced by individuals who are African American. (Pl. Ex. 11; Pl. Dep. 76, 82) (Pl. Ex. 5; Caligara Dep. 23-24, 27) Defendants preclude the fact that this information was based, not on a belief, but based upon Mr. Caligara's personal knowledge. Mr. Caligara was replaced by Mr. Adams. Plaintiff can and will prove this point. Plaintiff can also prove, as he testified, that Mr. Adams is non-licensed, non-credentialed employee, who was not a teacher, but a plumber. (Pl. Ex. 11; Pl. Dep. 76, 78)

There exists little possibility of juror confusion, or the need for a purported "mini trial". The factual issues in this case are clear. Mr. Gray's allocation of per session employment opportunities based upon race is central to this dispute and thus, its relevance is beyond contestation. The probative value of evidence which speaks to the very heart of material issues mandates its inclusion at trial. We respectfully submit that any perceived prejudice to Defendants can be managed if not prevented by and through a limiting instruction in the event Your Honor would see fit to employ such a mechanism. In summary, Mr. Caligara should be permitted to testify.

Further, Defendants' recitation of the state of the law regarding "me too" evidence falls short of being accurate. In sum and substance, Defendants' reliance upon the Second Circuit decision in *Shumway v. United Parcel Serv.*, 118 F.3d 60 (2d Cir. 1997) is misplaced. Defendants advocate for a narrow interpretation of what defines "similarly situated" employees, arguing, in essence for a judicial requirement that such individuals be completely identical. In doing so, they cite to the familiar "all material respects" language from *Shumway. Id.* at 64. However, the *Shumway* case is at best antiquated, and its application to a case like the one at bar is dubious. Whether by act or omission, Defendants ignore subsequent case law which defines "all material respects".

In a case of discrimination, inferences of discrimination may be concluded, upon a showing that plaintiff "was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself." *Graham v. Long Is. R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To that end, while "[w]hat will constitute 'all material respects' will vary from case to case...the plaintiff's and comparator's circumstances must bear a reasonably close resemblance, **but need not be "identical**.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (emphasis added). Indeed, "[a]n inference of discrimination can be raised by showing that (1) a plaintiff was similarly situated to other employees outside his protected group, and (2) his was treated less favorably than those employees." *Setelius v. Natl. Grid Elec. Services LLC*, 11-CV-5528 (MKB), 2014 WL 4773975, at *12 (E.D.N.Y. 2014).

Here, Plaintiff satisfies both prongs of the analysis. Limiting the analysis (as Defendants do) to Mr. Manning, there can be no serious dispute that he and Plaintiff were similarly situated in all material respects. *See Brown* at 230. Plaintiff is Caucasian and Mr. Manning is African American. (*See* Pl. Ex. 8) Both individuals were teachers employed by the DOE at Grady High

and who were subject to the same policy of employee discipline by Defendant Gray. (Pl. Ex. 8) These similarities are sufficient for Plaintiff to and Mr. Manning to be deemed comparators. The fact that Mr. Manning was a math teacher while Plaintiff taught Physical Education does not make them so dissimilar as to implicate the *Brown* holding. Based upon his own words and expected trial testimony, Mr. Manning was subject to the same rules and was late more frequently than Plaintiff. (Pl. Ex. 8) Since Mr. Manning did not receive an overall "U" rating and Plaintiff did, the lone substantive differences between the two are race and religion. Mr. Manning should not be precluded from testifying and such testimony must be presented to the jury. Again, we do not intend to introduce Mr. Manning's statement into evidence, but its content will invariably find its way into the record, as such information does, through trial testimony.

## POINT III

## INDIVIDUAL PERFORMANCE REVIEW RATINGS ARE ADMISSIBLE

Employee performance ratings from 2006 through 2010 should be admissible. We respectfully refer the court to the preceding section of this memorandum, particularly our discussion of the significance of the holding in *Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014).

Defendants' insistence that it "would be simply impossible to determine the similarity of the circumstances of each individual's employee rating to those of Plaintiff..." is misplaced. Again, "[W]hat will constitute 'all material respects' will vary from case to case...the plaintiff's and comparator's circumstances must bear a reasonably close resemblance, **but need not be "identical."**" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (emphasis added).

Defendants' reliance upon the comparatively aged decision in *Shumway v. United Parcel Serv.*, 118 F.3d 60 (2d Cir. 1997) without addressing the *Brown* holding is improper, if not

misleading. The performance evaluations issued to teachers at Grady High by Defendant Gray are the byproduct of what should be similar workplace standards. We posit Defendant DOE's time and attendance policy for teachers should be the same in both form and effect, regardless of an individual's race or membership in a protected classification. As set forth above, Defendants citing to the difference between Mr. Manning being a math teacher, as compared to Plaintiff teaching Physical Education is *de minimis*; patently insufficient to find he and Plaintiff are not "similarly situated" within the meaning of the law. The same principle should apply to employee performance evaluations.

Setting aside our subjective view of this analysis, the most compelling reason for admissibility lies with Mr. Gray himself. Plaintiff's attendance and punctuality were on par with or superior to no fewer than five (5) African-American teachers, none of whom received an unsatisfactory rating from Defendant Gray. (Pl. Ex. 14, ECF Doc. 54 at p. 16)

It is not in dispute that on the evaluation sheets for these teachers, Defendant Gray failed to check "U" or "S" in the attendance and punctuality column. (Pl. Ex. 14) Further, at deposition, Mr. Gray was unable to articulate a reason why he neglected to provide either a "U" or "S" in the attendance and punctuality column for any of the foregoing teachers, all of whom received overall "S" ratings despite the existence of time and attendance issues. (Pl. Ex. 4; Gray Dep. 245, 248-249) These facts are critical to the analysis. Any ambiguity inherent in the comparison between of Plaintiff and these comparators was created by Mr. Gray himself when he chose to employ uneven standards. Plainly, Defendants should not benefit from such self-generated ambiguity and the documents should be within the scope of admissible evidence.

## THE TESTIMONY OF CHRIS MANOS, MICHAEL GUIDA, TAJ GRAHAM AND MARTIN ROSENTHAL IS ADMISSIBLE AT TRIAL

In a last-ditch effort to avoid the unfavorable consequences stemming from the anticipated testimony of four (4) non-party witnesses, Defendants seek preclusion of their testimony. Defendants' consternation aside, relevant, binding precedent provides a basis by which all such testimony should be permitted.

"When evidence is challenged on an *in limine* motion, it should only be precluded when it is clearly inadmissible on all possible grounds." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). "A district court may exclude relevant evidence pursuant to Rule 403 only "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A court should consider the possible effectiveness of a jury instruction and the availability of other means of proof in making a Rule 403 determination." *United States v. Dupree*, 706 F. 3d 131, 138 (2d Cir. 2013). "'Evidence is relevant if it has any tendency in reason to prove the existence of any material fact; i.e., it makes determination of the action more probable or less probable than it would be without the evidence.'" *Contreras v. Artus*, 778 F3d 97, 108 (2d Cir. 2015) (quoting *People v. Giles*, 11 N.Y.3d 495, 499 (2008)).

### *Chris Manos*

Mr. Manos' anticipated testimony is based on personal knowledge. Mr. Manos participated in conversations with Defendant Gray regarding Plaintiff's religious head covering and the disciplinary letter issued to Plaintiff regarding this issue. (Pl. Ex. 10; Manos Dep. 19) Defendant

Gray also personally informed Mr. Manos of the DOE mandate to issue a formal apology to Plaintiff regarding his religious insensitivity. (Pl. Ex. 10)

Mr. Manos' anticipated testimony is based on his personal experience as a UTF representative. In this capacity, Mr. Manos, not unlike Ms. LaMendola, is in a position to provide clarity as far as the content of the contract and is competent to authenticate the contract under Fed. R. Evid. 901. (*See* Pl. Ex. 10)

In addition, Mr. Manos was present at a conference with Defendant Gray which took place on or about March 2010 regarding his plan to withhold information concerning technical difficulties experienced by Plaintiff with the Fitnessgram program. Mr. Manos has personal knowledge of these acts. Mr. Gray withheld this information until June 2010 in an effort to injure Plaintiff. (Pl. Ex. 10; Manos Dep. 35-37).

Lastly, Mr. Manos will be present at trial to testify. Plaintiff has no intention to try and move his witness statement into evidence. However, we expect that should he be permitted to testify, his testimony will memorialize the content of his statement.

### *Taj Graham*

Mr. Graham is capable of testifying based upon his personal knowledge as a fact witness. Amongst other individuals, Mr. Graham was present at the same faculty meeting and heard Defendant Gray tell Plaintiff that he would "go to hell" if he didn't eat the kosher food. (Pl. Ex. 13) Mr. Graham was present at the same faculty meeting during which he heard Defendant Gray tell Plaintiff that he would be better off wearing an African kuffi as opposed to a yarmulke. Mr. Graham had a conversation with Defendant Gray during which Defendant Gray asked if Graham would serve as a "black scapegoat". (Pl. Ex. 13)

13

Mr. Graham's testimony is not being offered to show Defendant Gray's propensity for discriminatory behavior in general, but rather to show his specific discriminatory animus directed toward Plaintiff. Such a practice is permissible. *See Scott v. WPIX, Inc.*, 10-cv-4622 (WHP), 2012 WL 2026428, at *3 (S.D.N.Y. 2012) ("[Plaintiff does] not offer this testimony as character evidence in violation of Federal Rule of Evidence 404(a). Rather, he offers it to show discriminatory intent."). There is no inherent risk of confusion or prejudice associated with his being permitted to testify. The mere fact his anticipated testimony is damaging to Defendant Gray does not provide a basis for its exclusion from this proceeding.

### Michael Guida

Mr. Guida's testimony will be based on personal knowledge of the aforementioned kosher food incident, not speculation or conjecture (Pl. Ex. 12) Again, Mr. Guida's testimony not being offered to show Defendant Gray's propensity for discriminatory behavior, but rather to show Gray's specific discriminatory animus directed toward Plaintiff.

"All evidence tending to demonstrate a Defendant's liability, by its nature, will be prejudicial in some respect to the Defendant; Rule 403 is designed to exclude only unfair prejudice." *Carofino v. Forester*, 450 F. Supp. 2d 257, 273 (S.D.N.Y. 2006). Here, any perceived prejudice, even if realized, can hardly be deemed unfair. Mr. Gray made these statements and should therefore account for his actions. Mr. Guida should be permitted to testify.

### Martin Rosenthal

Mr. Rosenthal was deposed. His testimony, not unlike that of his peers, will be limited to subjects based on his personal knowledge. Specifically, comments made by Defendant Gray as they relate to Plaintiff's claims and the Union grievance process. (Pl. Ex. 15)

Mr. Rosenthal has personal knowledge of the meeting between Plaintiff and Defendant Gray regarding Plaintiff's religious practices (head covering). Mr. Rosenthal was the UFT delegate representing Plaintiff during the meeting. (Pl. Ex. 15)

In summary, since each of the aforementioned individuals possesses direct personal knowledge of Defendant Gray's discriminatory treatment of Plaintiff, they should be permitted to testify as such.

**POINT V**

**TESTIMONY AND/OR EVIDENCE ABOUT PRIOR EEO COMPLAINTS MADE OR PENDING AGAINST DEFENDANT GRAY ARE ADMISSIBLE**

"'As a general rule, the testimony of other employees about their treatment by the Defendant is relevant to the issue of the employer's discriminatory intent.'" *Zubulake v. UBS Warburg LLC.*, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005) (quoting *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)). *See Gutierrez v City of New York*, 08-cv-6537 (LBS), 2012 WL 2357063, at *2 (S.D.N.Y. 2012); *Scott v. WPIX, Inc.*, 10-cv-4622 (WHP), 2012 WL 2026428, at *3 (S.D.N.Y. 2012); *Todaro v Siegel Fenchel & Peddy, P.C.*, 04-cv-2939 (JS) (WDW), 2008 WL 682596, at *4 (E.D.N.Y. 2008).

"[E]vidence of "other act[s] is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may, however, 'be admissible for another purpose, such as proving motive, opportunity, **intent**, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.' The Court of Appeals has indicated that courts should apply an inclusionary approach' to 404(b), which 'allows evidence for any purpose other than to show propensity." *Perez v. Progenics Pharm., Inc.*, 10-CV-08278 (LAP), 2015 WL 4111551, at *3 (S.D.N.Y. June 24, 2015) (internal citations omitted) (emphasis added).

Here, Defendants offer nothing more than minimally illustrative, third circuit precedent and conclusory statements to the effect that such evidence is being offered to show propensity. However, as set forth above, such evidence can be utilized to prove intent. Very little has changed since the onset of this case. As it was upon inception, Mr. Gray's intent to discriminate against Plaintiff will be the issue presented to the jury.

**POINT VI**

**EVENTS SUBSEQUENT TO THE 2009-2010 "U" RATING ARE ADMISSIBLE**

Defendants' argument regarding Plaintiff's exhibit 49, the article from the Daily News, is unpersuasive. While the document itself may constitute inadmissible hearsay, its content is not automatically precluded. Defendants preclude the possibility that Ms. Codero, the volleyball coach who claims Mr. Gray made a series of racially discriminatory comments to her, will not become a necessary witness. Not surprisingly, Mr. Gray denies making such comments. The content of the article may become admissible not as character evidence, but to specifically rebut affirmative statements (or denials) made by Mr. Gray. In such a circumstance, Ms. Cordero would be testifying based upon personal knowledge, not speculation or conjecture. Such testimony is not being offered for the truth of the matter asserted, but may be illustrative of Defendant Gray's discriminatory intent.

Defendants' arguments regarding the admissibility of various letters of recommendation are logically flawed. On one hand, Defendants claim that such letters are irrelevant and constitute improper character evidence, on the other, Defendants identify Mr. Gerber, one of the authors, on their proposed witness list. In the course of doing so, it would appear that Defendants advocate for the inclusion of anything negative Mr. Gerber may have had to say about Plaintiff, while simultaneously arguing for the exclusion of positive content. Further, to the extent Plaintiff's qualification and job performance are relevant to his being considered for the desired "per session"

16

work, such information is not character evidence, but may be useful as rebuttal evidence. We anticipate that as Defendants' witness, Mr. Gerber will discuss, what he considered to be issues with Plaintiff's past performance during his tenure as assistant principal at Grady High. If this were to take place, Mr. Gerber's letter of recommendation has value for impeachment purposes.

### III.    CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' motion *in limine* in its entirety, or, in the alternative, this court should reserve judgement on each issue pending the establishment of proper evidentiary foundations and further trial testimony.

Dated: Bohemia, New York
December 8, 2015

ZABELL & ASSOCIATES, PC
Attorneys for Plaintiff

By:      _____

Saul D. Zabell, Esq.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
(631) 589-7242
(631) 563-7475
szabell@laborlawsny.com
